**In re Willie (NMN) WILLIAMS d/b/a Williams Hauling Service, Lillie Mae Revely Williams, Debtors.**

**Bankruptcy No. 80–40035.**

United States Bankruptcy Court, D. Kansas.

Feb. 20, 1981.

Jan Haley, Stanley E. Oyler, Ascough, Bausch & Eschmann, Topeka, Kan., for Savings Bond and Mortgage Co.

Dale V. Berning, Berning & Rupp, Topeka, Kan., for debtors.

Cary L. Standiferd, trustee.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

On October 8, 1980 Savings Bond and Mortgage Company (Savings Bond), a creditor herein, filed a motion seeking abandonment of three motor vehicles and a camper top. Willie Williams and Lillie Mae Revely Williams (debtors) opposed the abandonment to Savings Bond. As only one of the vehicles remained property of the estate on October 9, 1980, the debtors having exempted the other two vehicles and having been discharged, the parties sought determination of the status of Savings Bond's liens. Savings Bond claims it has enforceable liens. The debtors claim that discharge has rendered the liens ineffective and unenforceable.

The creditor, Savings Bond and Mortgage Company, appears by Stanley E. Oyler and Jan Haley of Ascough, Bausch and Esch-

mann, Topeka, Kansas; the debtors appear by Dale Berning of Berning and Rupp, Topeka, Kansas. The trustee, though notified of the motion and hearing thereon did not file a response or participate in this proceeding.

The matter was argued to the Court and the last legal memorandum of the parties was filed on December 23, 1980.

*Findings of Fact.* The facts relevant to determination of the controversy are not disputed.

The debtors filed a voluntary petition for relief on January 15, 1980. They sought to have three motor vehicles exempted under the laws of the State of Kansas. One vehicle, a Mercury, was sought pursuant to K.S.A. § 60–2304(3) as a means of conveyance. Two vehicles, a Chevrolet truck and an International pickup, were sought pursuant to K.S.A. § 60–2304(5) as tools or equipment of trade. In addition to the three vehicles the debtors sought to exempt, the debtors' schedules list their ownership and possession of a Buick. The schedules further reflect that Savings Bond has a lien on all of the vehicles except the Chevrolet truck.

On January 28, 1980 all creditors were notified of the filing. The notice, in part, provided that pursuant to Local Rule 4004, any objection to the debtors' claim of exempt property must be filed within 15 days of the conclusion of the meeting of creditors provided for under 11 U.S.C. § 341. The local rule was adopted from the Suggested Interim Rules submitted by the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States under date of August 15, 1979. The § 341 meeting was concluded on March 7, 1980. Though an objection was made to the debtors' requested exemptions, that objection, later denied, was not by Savings Bond and did not pertain to or affect the vehicles now in question. Two of the three vehicles on which Savings Bond claims a lien were automatically determined exempt, one remains property of the estate.

On July 31, 1980 the debtors appeared before the Court for a discharge and reaffirmation hearing prescribed by 11 U.S.C. § 524. At that hearing a joint application for reaffirmation by the debtors and a creditor, Finance America Corp., was approved and the debtors were granted a discharge effective that date. No other reaffirmation agreements were submitted to the Court and none were negotiated between these parties. The mailing to creditors of a certificate notifying them of the discharge was not accomplished until October 8, 1980; however, creditors had been notified of the discharge/reaffirmation date as early as January 28, 1980.

On October 8, 1980 Savings Bond filed its motion for abandonment of the three vehicles and camper top. The camper top was not an asset of the debtors on the date of the orders for relief and thus Savings Bond's lien rights to it are not in issue in this proceeding. The Buick remains an asset of the estate though the trustee has served notice of intended abandonment at the close of the estate pursuant to 11 U.S.C. § 554(c). The International pickup and the Mercury were exempted to the debtors and remain in their possession.

*Issue.* Where reaffirmation has not been sought and approved, what effect does the debtors' discharge have on a creditor's pre-filing lien rights where property is in the debtor's possession through exemption or abandonment or in the trustee's possession prior to closing the estate.

*Conclusions of Law.* Savings Bond claims it may enforce its pre-filing *in rem* lien rights against property of the debtors subsequent to discharge. The creditor further claims that it may enforce its *in rem* lien rights against property of the estate at any time prior to closing of the estate.

The debtors take the position that subsequent to discharge, the debt owing Savings Bond is extinguished and thus no *in personam* or *in rem* right remains to be enforced.

In essence, Savings Bond claims that lien rights and the methods by which they may be exercised by creditors under the repealed Bankruptcy Act have not been changed by passage of the new Code. The debtors assert the new Code has in fact changed the method by which a creditor's lien rights may be exercised and preserved and that a creditor's failure to abide by these changed methods will result in loss of the right.

■ The Court, for reasons hereafter stated, determines that after discharge a creditor may not enforce pre-filing liens against the debtors or their property in the absence of an enforceable reaffirmation agreement. The Court further determines that discharge does not affect the creditor's right to enforce liens against property of the estate.

The debtors filed their petition and received orders for relief on January 15, 1980. At the moment of filing, all creditors having claims against the debtors were prohibited from taking any action against the debtors, their property or that of the estate as described in 11 U.S.C. § 362.

■ A creditor, pursuant to 77 U.S.C. § 101(9)(A), is defined as:

[An] *entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;*

A claim, pursuant to 11 U.S.C. § 101(4)(A), is defined as:

[A] *right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or*

This creditor and its claim fall within the definitions and are subject to the stay. The stay protection afforded debtors, unless otherwise determined by the Court, continues until their discharge is granted or denied. The protection extends to the debtors personally and to their property whether acquired by exemption or by abandonment. See § 362(a)(5) and (c); § 554; H.R. 95–595, 95th Cong. 1st Sess. (1977) 343, U.S.Code Cong. & Admin.News 1978, 5787.

At the inception of the proceeding all property interests of the debtors became property of the estate. § 541. The proper-

ty of the estate is administered by a trustee in every case. § 701. During the course of the proceeding and prior to discharge, the debtors may receive encumbered and unencumbered property from the estate through exemption and abandonment. § 522, § 544(a), Local Rule 4004. Subsequent to discharge, the debtors may receive unencumbered property having a *de minimis* value to the estate. § 554(c). The debtors and their property are protected by the § 362 stay until the case is dismissed or they are granted or denied discharge.

■ If the property received by the debtors is encumbered, a number of alternatives exist for the debtors and creditors prior to discharge. The debtors may attempt to avoid a creditor's lien pursuant to § 522(f). They may attempt to redeem as provided by § 722. They may attempt to reach agreement with one or more creditors to reaffirm as provided by § 524(c) and (d). They may merely await action by the creditors. The creditor, though prohibited from taking action outside the bankruptcy court against debtors or their property, may seek relief from the stay in order to proceed in state court with foreclosure or replevin. Alternatively, a creditor may, because of the expanded jurisdiction granted the bankruptcy court pursuant to 28 U.S.C. § 1471, proceed with those same actions in the bankruptcy court. The creditor may also seek a reaffirmation agreement from the debtors, abandonment pursuant to § 554(b), disposition of its collateral to it pursuant to § 725 or a combination of these alternatives.

■ In this instance, the debtors received property from the estate by exemption and hope to receive estate property in the future by abandonment at the close of the case. The debtors' expectations as to post discharge receipt of any secured property from the estate are to be unfulfilled. The trustee has filed a pleading indicating a desire to abandon property of the estate to the debtors pursuant to § 554(c). He is, however, pursuant to the duties imposed upon him by § 704 and § 725, required to dispose of fully encumbered property of the estate which remains in the estate at or near the close of the case to those parties in interest possessing valid liens in the property. The debtors have no interest whatsoever in the encumbered property of the estate. Receipt of such property after discharge would result in a windfall to them and constitute a probable breach of the trustee's fiduciary duty to creditors.

■ The debtors and the creditor did not enter into a reaffirmation agreement and the debtors have been discharged. The creditor did not seek reaffirmation or a return of its collateral through court proceeding prior to discharge.

Under these circumstances, the creditor's lien rights as to the debtors' property would survive discharge pursuant to § 14(f) of the now repealed Bankruptcy Act. Section 14(f) in part stated:

*An order of discharge shall—*

\*　　\*　　\*　　\*　　\*　　\*

*(2) enjoin all creditors whose debts are discharged from thereafter instituting or continuing any action or employing any process to collect such debts as* *personal* *liabilities of the bankrupt.* (emphasis added)

A discharge merely prohibited *in personam* actions against the discharged bankrupt but did not protect his property. The lien of a creditor was not extinguished nor was the debt. One might arrive at the conclusion that the same result may be obtained under the Code, if one does not closely examine or discount sections 524 and 727, portions of the legislative history and the recited reasons and rationale underlying this amendatory legislation.

Section 506(d) of the present Code states:

*To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—*

*(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or*

*(2) such claim was disallowed only under section 502(e) of this title.*

The legislative history of § 506 reported at H.R. 95–595, 95th Cong. 1st Sess. (1977) 357 states:

> Subsection (d) permits liens to pass through the bankruptcy case unaffected.

Section 522 of the Code provides in subsection (c) that property exempted is still subject to a lien unless that lien is avoided. The legislative history reported at H.R. 95–595, *supra*, 362, recognizes the rule of *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) wherein it was held that the mere fact that property is exempted does not extinguish an otherwise valid lien. 3 *Collier on Bankruptcy*, 15th Ed. § 522.27 indicates no change has been made.

Finally, *Collier*, *supra*, § 524.01, in commentary on § 524, states that only personal liability is discharged and that liens not avoided by the Code may be enforced notwithstanding discharge of the debtor. The Collier comments and the quoted sections of the Code seemingly echo the law as it existed under § 14(f) of the Act and appear to be a business as usual declaration for the Code. See *In Re Coots*, 4 B.R. 281, 6 B.C.D. 429 (Bkrtcy., S.D.Ohio, 1980). Thus, it appears that certain sections of title 11, some legislative history, a treatise and at least one decision would seem to favor the proposition that in instances such as the present one, creditors' *in rem* rights may be enforce against the debtors' property post discharge.

Opposition to the theory that *in rem* rights survive discharge is found in some general concepts of law, portions of the legislative history and sections 524 and 727 of the Code. Reading the Code as a whole, this Court determines that the apparent conflicts between sections thereof can only be resolved by finding that without reaffirmation, liens do not service discharge.

■ Since it is the enforceability of a lien which is in question, the definition of a lien or mortgage would seem important.

> The word lien has been variously defined as being a hold or claim which one has upon property of another as security for a debt or charge, as a tie that binds property to a debt or claim for its satisfaction, as a right to possess and retain property until a charge attaching to it is paid or discharged, as a charge imposed upon specific property for performance of an act, and as being synonymous with a charge or encumbrance upon a thing. *Assembly of God v. Sangster*, 178 Kan. 678, 680, 290 P.2d 1057 (1955).

A lien is an incident of and inseparable from the debt which it secures. In absence of the debt there can be no lien. *U. S. v. Phillips*, 267 F.2d 374 (2nd Cir. 1959). A mortgage is security for a debt, a lien or encumbrance, security for performance of an obligation. *Stark v. Morgan*, 73 Kan. 453, 85 P. 567 (1906). The existence of the obligation to be secured is an essential element to a mortgage. *Conway v. Alexander*, 11 U.S. 217 (7 Cranch), 3 L.Ed. 321 (1812); *Price v. 1st National Bank*, 62 Kan. 735, 64 P. 637 (1901).

Section 727(a) of title 11 provides that a discharge shall be granted unless one or more of the ten enumerated reasons recited therein are found to be present. Section 727(b) provides that except as provided in § 523, discharges under subsection (a) discharge the debtor from all debts that arose before the date of the order for relief in chapter 7. Section 524(a) provides in pertinent part:

> (a) A discharge in a case under this title—
>
> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, or 1328 of this title, whether or not discharge of such debt is waived;
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, *or from property of the debtor*, whether or not discharge of such debt is waived; and (emphasis added)

As earlier set forth, the *Collier* reference to this section states that only personal liability is discharged. The pertinent *Collier* sec-

tion does not mention the clause emphasized above and thus does not explain or rectify the commentator's conclusion which is in apparent conflict with the plain meaning of that clause. It should be noted that the emphasized clause was not present in § 14 of the Bankruptcy Act. The legislative history of the Code section as reported in H.R.Rep., *supra*, 366, U.S.Code Cong. & Admin.News 1978, 6321 states:

> The change is consonant with the new policy forbidding binding reaffirmation agreements under proposed 11 U.S.C. 524(d), and is intended to insure that once a debt is discharged, the debtor will not be ·pressured in any way to repay it. In effect, the discharge <u>extinguishes</u> the debt, and creditors may not attempt to avoid that. (emphasis added)

Referring again to the legislative history, H.R.Rep., *supra*, 117, 167–173, 365–366, it is stated that the reason for placing reaffirmation agreements solely under the aegis of the court was to prevent the unsupervised reaffirmation and its attendant general unfairness to debtors. The pressure, unequal bargaining position and acumen concerning commercial transactions and all the other circumstances working against the debtors in nonsupervised reaffirmation were to be abolished under § 524(c) and (d). The debtors were thus to have a better chance at a fresh start.

A reaffirmation agreement admittedly was not entered in this case. Section 524(c) states:

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if—
>
> (1) such agreement was made before the granting of the discharge under section 727, 1141, or 1328 of this title;
>
> (2) the debtor has not rescinded such agreement within 30 days after such agreement becomes enforceable;
>
> (3) the provisions of subsection (d) of this section have been complied with; and

> (4) in a case concerning an individual, to the extent that such debt is a consumer debt that is not secured by real property of the debtor, the court approves such agreement as—
>
> (A)(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and
>
> (ii) in the best interest of the debtor; or
>
> (B)(i) entered into in good faith; and
>
> (ii) in settlement of litigation under section 523 of this title, or providing for redemption under section 722 of this title.

From the foregoing, it is seen that debtors may request and be granted exemption of certain property. § 522 and Local Rule 4004. During the course of administration of the estate, certain property of the estate may be abandoned to debtors by the trustee. § 554(a). This property, prior to discharge, is subject to valid pre-filing liens or mortgages in accordance with § 506 and the rule announced in *Long v. Bullard, supra.* This is not to say, however, that subsequent events during the term of the proceeding may not change or abrogate the efficacy of said rights and interests.

Creditors have the ability during the course of the case to seek relief from the stay and bring actions to foreclose or replevin property in the possession of debtors through exemption. Before property is abandoned pursuant to § 554(a) by the trustee to debtors, creditors may seek specific abandonment under § 554(b). Should creditors have neglected to do this, relief from the stay, replevin or foreclosure are available against the debtors' property until discharge occurs. These rights and possibly others are available to creditors to enable them to protect their interests. Additionally, reaffirmation by mutual agreement of the parties may be entered prior to discharge. A forum, the bankruptcy court, is provided for all of this and ample opportunity for hearing is afforded to the parties.

Tʰᵉ Code has imposed certain requirements on creditors for retention of liens

after discharge and grants specific rights for recovery of property during a proceeding which heretofore did not exist under the Act. This is not an unusual concept. Both the Uniform Commercial Code (K.S.A. § 84–1–101 *et seq.*) and the Uniform Consumer Credit Code (K.S.A. § 16a–1–101 *et seq.*) impose duties upon creditors before security interests may be perfected and property may be recovered. The Probate Code, at K.S.A. § 59–2239, imposes certain limits upon the time and place claims may be brought against a decedent's estate. Should creditors fail to take advantage of the opportunities afforded for protection of security interests and claims, the right to assert those interests or claims is lost. These statutes do not strip creditors of property rights, they merely modify the method and time frame within which the rights must be exercised much as would a change in a statute of limitation. See *Campbell v. Holt*, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885); *Cutler v. U. S.*, 202 Ct.Cl. 221, *cert. den.* 414 U.S. 1065, 94 S.Ct. 572, 38 L.Ed.2d 470 (1973). The loss of a property right in the existent circumstances is a direct result of creditor inaction constituting a waiver or forfeiture of that right and not a direct result of the legislative enactment of various sections of the Code.

If the debtors receive their discharge without reaffirmation and without creditors utilizing any of their rights to protect pre-filing liens, the discharge extinguishes the debt underlying the liens. § 524(a)(1) and (2), § 524(c) and § 727(b). Unquestionably, an ordinary note evidencing the debt underlying a lien or mortgage is a dischargeable obligation unless determined otherwise pursuant to § 523(a) or § 727(a)(1–10). *In Re Grimes*, 3 CBC2d 332 (D.Kan.1980); *In the Matter of Coots, supra.* If the underlying debt is extinguished an enforceable lien cannot exist. See *U. S. v. Phillips, Conway v. Alexander, Price v. 1st National Bank, supra.*

A creditor attempting to collect a discharged debt, either from debtors or their property, is in violation of § 524(a)(2). See *In Re Warren*, 3 CBC2d 326 (N.D.Ala.,1980). The debt no longer exists and thus the lien ceases to exist. As the document underly-

ing the lien (the note) has no legal efficacy, no default could occur to trigger lien enforcement for no payment liability exists in the eyes of the law. This result arises from the addition of the language *or from the property of the debtors* which was not present under § 14 of the Act. The new language renders decisions under § 14 inapplicable to this situation. The result is also counselled by the requirement of reaffirmation under court auspices before a pre-filing lien is enforceable against the debtors or their property in a post discharge proceeding, regardless of forum.

If the lien survives discharge as something enforceable against the debtors' property without benefit of the extinguished underlying debt, there would be no reason for reaffirmation. No impetus would exist for the debtors to reaffirm and thus create personal liability unless they faced imminent loss of their property through foreclosure and replevin. In many instances, the family home and auto payments are current or near current and thus the imminent danger of loss does not exist. Under these circumstances, even if the debtors wished to reaffirm how could a court charged under § 524(c)(4) with finding reaffirmation to be in the debtors best interest make such a finding?

If the lien survives discharge without reaffirmation and default somehow occurs in this apparent non-personal obligation running between the *res* and the creditor, to whom is the notice of default to issue since the debtors, the property owners, owe no legally enforceable obligation to the creditor? Does the notice of default accelerate the discharged note and if so against whom? With whom does the creditor negotiate for retention of the property? Against whom is the replevin or foreclosure brought? Who has rights of redemption? Is the redemption for actual value or for the amount bid at judicial sale and by whom is it payable? If the answer to these questions is the debtors, are not the above actions taken in violation of the injunction set forth in § 524? Can it be seriously contended that under this interpretation the debtors have not been placed in the same disadvantageous position that caused

enactment of § 524(a)(2), (c) and (d)? The former debtors and creditor would be meeting in an attempt to come to an agreement of terms and conditions whereby the former debtors could retain their property. The agreement will, according to § 524, be unenforceable in court and be violative of the § 524 injunction and yet in most instances it will be complied with by the debtors. This is the reason the law was changed, to abolish this illusory fresh start concept found to exist under the Act. See D. Cowans, *Bankruptcy Law and Practice*, § 5.7 pg. 162, 163 (Interim Ed. 1980). Under the Code, these questions should not arise for it is intended that in situations such as this an enforceable lien against the debtors or their property does not survive discharge.

*Summary.* The debtors may receive property from the estate by exemption or by abandonment before discharge. The debtors and creditors have from the date the proceeding is initiated by filing for orders for relief until discharge to negotiate for the debtors' retention of encumbered property through reaffirmation or redemption. Should either of these alternatives be unavailing, the creditor may obtain its collateral through foreclosure, replevin, approved repossession or other available relief. The refusal of debtors to reaffirm or the debtors inability to redeem would allow a creditor to deem itself insecure and constitute a basis for replevin, foreclosure, repossession, etc. for in the absence of reaffirmation or redemption the creditor will lose its lien upon discharge. In practice, creditors currently file complaints seeking alternative relief. Commonly such a complaint may offer reaffirmation or redemption and request adequate protection during the interim period till discharge through a request for contract payment. These payments would be liquidated damages should reaffirmation not be reached by the parties, allowed by the Court or rescinded pursuant to § 524(c)(2). As an alternative, the complaint may seek relief from the stay and foreclosure, replevin or other appropriate relief. Such a complaint protects the creditor's interest while leaving all options open to the debtors for retention of their property.

The debtors are ensured a fresh start as all pre-filing debt agreements to be enforceable against either them or their property must be approved if a consumer debt or acknowledged if a real property obligation and their options and responsibilities explained to them by the Court at the discharge/reaffirmation hearing. The diligent creditor is ensured of a binding post-discharge agreement with continued personal liability of the debtors and a lien in the property, both of which it received under the parties' pre-filing agreement, or return to it of the property by order of the Court. The creditor choosing not to exercise its rights, waives or forfeits them.

Property remaining in the estate may be sought by the creditor at any time under the specific abandonment provision of § 554(b). If a creditor wishes to wait until the estate nears closing, encumbered property should be transferred to the secured creditor by the trustee pursuant to § 725 as only unencumbered property of negligible value to the estate should be abandoned to the debtors pursuant to § 554(c).

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.