**In re Norman Wilford WEATHERS, Mordine (Nmn) Weathers, Debtors.**

**POLK COUNTY FEDERAL SAVINGS & LOAN ASSOCIATION OF DES MOINES, Plaintiff,**

**v.**

**Norman Wilford WEATHERS and Mordine Weathers, Defendants.**

**Bankruptcy No. 80–20194.
Adv. No. 81–0095.**

United States Bankruptcy Court,
D. Kansas.

Dec. 8, 1981.

John T. Flannagan, Payne & Jones, Chartered, Olathe, Kan., for debtors/defendants.

R. Scott Beeler, Olathe, Kan., for plaintiff.

F. Stannard Lentz, Mission, Kan., trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for hearing at Kansas City, Kansas, on June 24, 1981, upon plaintiff's Complaint for Relief from Stay and Motion to Reopen the case; and defendants' Objection to consideration of plaintiff's Complaint for Relief from Stay. Plaintiff appeared by R. Scott Beeler. Defendant-debtors appeared by John T. Flannagan, of Payne & Jones, Chartered. The Court heard plaintiff's Motion to reopen and sustained the Motion for the limited purpose of determining whether plaintiff's lien on defendants' real estate survived defendants' discharge. The Court directed the parties to file briefs on the issue; and took the issue under advisement on July 14, 1981.

## FINDINGS OF FACT

This Court makes the following fact findings based on the parties' stipulations (Transcript of June 24, 1981), and on the exhibits and pleadings filed herein:

1. That the Court has jurisdiction over the parties and the subject matter.

2. That on November 17, 1978, Missouri Valley Investment Company loaned the Weathers $49,000.00. In consideration of the loan, the Weathers executed a mortgage of their real estate to Missouri Valley. The mortgage was duly filed and recorded on November 21, 1978.

3. That on February 20, 1979, Missouri Valley assigned the note and mortgage to Polk County Federal Savings and Loan Association of Des Moines, plaintiff herein. The assignment was duly recorded on February 26, 1979; the Weathers had constructive notice of the assignment.

4. That the Weathers were in default on the note from December, 1979, to May, 1980.

5. That on March 10, 1980, the Weathers filed a Chapter 7 petition. They listed Missouri Valley, but not Polk County, as a creditor. Neither Polk County nor Missouri Valley filed a Proof of Claim.

6. That the Weathers claimed Polk County's security as an exempt homestead. No one objected to the claim for exemption; so the exemption was granted pursuant to 11 U.S.C. § 522(*l*).

7. That no one requested the Court to determine and allow or disallow Polk County's secured claim, during the pendency of the bankruptcy proceeding.

8. That Norman Weathers initiated reaffirmation negotiations with Missouri Valley; and on May 7, 1980, Missouri Valley and Norman Weathers entered into a "Forbearance Agreement". In the agreement,

Missouri Valley[1] agreed to forbear from foreclosure in consideration of Norman Weathers' reaffirmation of the debt. Mrs. Weathers' was not a party to the negotiations; and she did not execute the agreement. The reaffirmation agreement was never filed with the Court. However, the Weathers honored the agreement; from May 7, 1980 until September, 1980, they made regular monthly payments to Missouri Valley[2]. They did not pay the accrued arrearage of December, 1979, to April, 1980.

9. That on September 8, 1980, the Weathers were discharged. From that date forward, they have refused to make any mortgage payments.

10. That on September 11, 1980, the case was closed.

11. That on December 2, 1980, Polk County filed a foreclosure petition in the District Court of Johnson County, Kansas, Case No. 98276.

12. That in light of the absence of an enforceable reaffirmation agreement on file, Polk County filed a Motion to Reopen the case, for a determination of the validity of its lien after the Weathers' discharge.

## ISSUES

I. WHETHER OR NOT UNDER THE BANKRUPTCY REFORM ACT OF 1978, THE LIEN SURVIVES THE DISCHARGE WHEN NO REAFFIRMATION AGREEMENT HAS BEEN ENTERED INTO BETWEEN THE DEBTOR AND THE CREDITOR.

II. WHETHER OR NOT THE DEFENDANT–DEBTORS ARE ENTITLED TO JUDGMENT PRAYED FOR IN THEIR COUNTER–CLAIM.

III. WHETHER OR NOT IT IS NECESSARY UNDER 11 U.S.C. § 362(c)(2)(A) & (C) FOR A CREDITOR TO FILE A COMPLAINT FOR RELIEF FROM STAY TO SEEK ENFORCEMENT OF A LIEN AFTER A DEBTOR HAS BEEN DISCHARGED AND THE CASE CLOSED.

## CONCLUSIONS OF LAW

### I.

The Weathers argue, at length, that under the Bankruptcy Code, liens no longer survive discharge as they did under the Bankruptcy Act of 1898.[3] The defendants' rationale or argument can be outlined as follows:

1. That the Code creates a host of ways for creditors to preserve their liens, prior to discharge. For instance, a creditor may: file an application for abandonment under § 554; file a relief from stay complaint to get foreclosure or replevin relief in a state forum; or file a reclamation or foreclosure petition in the bankruptcy proceeding, pursuant to the Bankruptcy Courts' expanded jurisdiction under 28 U.S.C. § 1471;

2. That when a creditor fails to avail itself of the Code's lien preservation methods, as did Polk County Federal Savings & Loan, the creditor loses its in rem rights upon discharge;

3. That although certain legislative comments indicate that liens still survive discharge under the Code, those comments are erroneous expressions of legislative intent;

4. That the true legislative intent may be deduced from the overall policy of the Code; a discharge extinguishes the debt and gives the debtor a fresh start. That once a debt is extinguished, there is nothing left to support the lien; therefore, the lien is necessarily extinguished upon discharge. That unless the unpreserved

---

1. There is some dispute as to whether Missouri Valley had the authority to enter into such an agreement, as Polk County's agent.

2. The parties agree that Missouri Valley was Polk County's authorized agent for collection.

3. Under the Bankruptcy Act of 1898, it was widely recognized that liens and in rem rights survived discharge. Courts frequently cited *Long v. Bullard*, 117 U.S. 617, 65 S.Ct. 917, 29 L.Ed. 1004 (1886) for the proposition that liens on exempt property were enforceable after discharge.

lien is extinguished upon discharge, the Code policy of fresh start is impaired. In rem actions violate the debtor's fresh start as much as in personam actions; in rem actions result in a taking of vital property, such as the debtor's homestead.

This issue of lien survivability has been addressed by the other Bankruptcy Courts in this district. In *In re Grimes*, 6 B.R. 943, 3 C.B.C.2d 332 (Bkrtcy.D.Kan.1980), Judge Robert B. Morton, of Wichita, Kansas, held that absent reaffirmation, upon discharge the debtor's personal liability was extinguished. Then, on the creditor's Motion to alter, amend, or clarify the judgment, Judge Morton filed an amended Order and Judgement, in which he held that upon discharge, the creditor's lien remained valid, and the creditor's in rem rights remained intact.

In *In re Willie Williams*, 9 B.R. 228, 7 B.C.D. 388, 4 C.B.C.2d 95 (Bkrtcy.D.Kan. 1981), Judge James A. Pusateri, of Topeka, Kansas, held that unless a creditor took affirmative action to preserve its lien prior to discharge, both the debt and the lien were extinguished, and the creditor lost its in rem rights.

Clearly, *In re Grimes, supra*, is the majority view. With the exception of Judge Pusateri's decision, it appears that in all cases decided under the Code, the courts have held that liens survived discharge. See *In re Cornist*, 7 B.R. 118, 3 C.B.C.2d 381, 384; C.C.H. ¶ 67,721 (Bkrtcy.S.D.Cal.1980); *In re Robertson*, 4 B.R. 213, 6 B.C.D. 375, 2 C.B. C.2d 136 (Bkrtcy.D.Colo.1980); *In re Sillani*, 9 B.R. 188, C.C.H. ¶ 67,902 (Bkrtcy.S.D.Fla. 1981); *In re Williams*, 7 B.R. 234, 3 C.B.C.2d 409 (Bkrtcy.M.D.Ga.1980); *Matter of Bell*, 8 B.R. 549, 7 B.C.D. 219, 4 C.B.C.2d 285 (Bkrtcy.E.D.Mich.1981) *rev'd on other grounds*, 15 B.R. 859, 8 B.C.D. 127 (U.S. D.C.E.D.Mich.1981); *In re Honaker*, 4 B.R. 415, 6 B.C.D. 474, 2 C.B.C.2d 208 (Bkrtcy. E.D.Mich.1980); *In re Coots*, 4 B.R. 281, 6 B.C.D. 429, 2 C.B.C.2d 233, C.C.H. ¶ 67,568 (Bkrtcy.S.D.Ohio 1980); *In re Berry*, 11 B.R. 886, C.C.H. ¶ 68,271 (Bkrtcy.W.D. Pa.1981); and *In Matter of Meyers*, 2 B.R. 603, 604 (Bkrtcy.E.D.Mich.1980).

Defendants, Weathers, further argue that the cases decided under the Code are not persuasive because those courts assumed, or summarily concluded, that liens continued to survive discharge under the Code. In light of the Weathers' detailed rationale for their contentions, this Court feels compelled to address the issue of lien survivability in some detail.

The first analytical step is an examination of the express language of the Code. A number of Code sections deal with lien creation, duration, or the effect of discharge. The applicable sections of Title 11, United States Code, are stated in pertinent part as follows:

"§ 506. Determination of secured status . . . .

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title;"

"§ 522. Exemptions . . . .

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, . . . before the commencement of the case, except—

. . . . .

(2) a lien that is—

(A) not avoided under section 544, 545, 547, 548, 549, or 724(a) of this title;

(B) not voided under section 506(d) of this title;"

"§ 362. Automatic stay.

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

. . . . .

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) Any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

. . . . .

(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; and

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, or 13 of this title, the time a discharge is granted or denied."

"§ 524. Effect of discharge.

(a) A discharge in a case under this title—

. . . . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived;"

■ In the instant case, Polk County's claim was not an "allowed secured claim" because no party in interest filed a Proof of Claim and asked the Court to determine and allow or disallow the claim, as section 502(a) prescribed. Section 506(d) says although liens against unallowed secured claims are void, when the reason the secured claim is not allowed is because no party in interest ever requested allowance, then the lien is not void. Thus, during the pendency of the bankruptcy proceeding, Polk County's claim was not void.

■ The lien was not voided under § 506(d); and it was not avoided under §§ 544, 545, 547, 548, 549, or 724(a). Thus, pursuant to § 522(c), the Weathers' exempt homestead was liable during *and after* the case, for the debt the homestead secured.

However, during the pendency of the bankruptcy proceeding, Polk County was stayed from any acts against property of the estate or property of the debtors (i.e. exempt property, such as the Weathers' homestead), pursuant to § 362(a). Because relief from stay was not requested or granted, Polk County was stayed from acts against the Weathers' realty until the earliest of the time the case was closed or dismissed, or the discharge was granted or denied. Thus, Polk County was stayed from acts against the Weathers' realty until the Weathers were discharged.

■ Once the Weathers were discharged, the stay terminated and Polk County could once again enforce its lien against the Weathers' real estate. However, the discharge continued to enjoin Polk County's pursuit of the Weathers for personal liability, because their personal liability was extinguished upon discharge.

■ Section 524(a)(2) also says, unlike its predecessor section [4] in the Bankruptcy Act of 1898, that the creditor is enjoined from acts to collect "from property of the debtor". The Weathers premise their argument that liens are extinguished by discharge on this new language in § 524(a)(2). On its face, the language does appear to be ambiguous, in light of the language in §§ 362, 506 and 522. However, the confusion can easily be resolved by an examination of the legislative comments on the pertinent sections of the Code.

Section 506(d) is explained as follows: "Subsection (d) permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under

4. § 14(f)(2).

section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed..." H.R. No. 95–595, 95th Cong., 1st Sess. 357 (1977); *cf.*, S.R. No. 95–989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6313.

Section 522(c) is explained as follows: "... The bankruptcy discharge will not prevent enforcement of valid liens. The rule of *Long v. Bullard*, 117 U.S. 617 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as on exempt proper-ty...." H.R. No. 95–595, 95th Cong., 1st Sess. 361 (1977); S.R. No. 95–989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5862, 6317.

The comment to § 362(a) says:

"Paragraph (4) stays lien creation against property of the estate. Thus, taking pos-session to perfect a lien or obtaining court process is prohibited. To permit lien creation after bankruptcy would give certain creditors preferential treatment by making them secured instead of unse-cured.

Paragraph (5) stays any act to create or enforce a lien against property of the debtor, that is, most property that is ac-quired after the date of the filing of the petition, property that is exempt, or prop-erty that does not pass to the estate, to the extent that the lien secures a prepeti-tion claim. Again, to permit postbank-ruptcy lien creation or enforcement would permit certain creditors to receive preferential treatment. It may also cir-cumvent the debtors' discharge." H.R. No. 95–595, 95th Cong., 1st Sess. 341 (1977); S.R. No. 95–989, 95th Cong., 2d Sess. 50 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5836, 6298.

The comment to § 362(c) clarifies the duration of the stay, as follows:

"Subsection (c) of section 362 specifies the duration of the automatic stay. Paragraph (1) terminates a stay of an act against property of the estate when the property ceases to be property of the estate, such as by sale, abandonment, or exemption. It does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor. Paragraph (2) terminates the stay of any other act on the earliest of the time the case is closed, the time the case is dismissed, or the time a discharge is granted or denied..." H.R. No. 95–595, 95th Cong., 1st Sess. 343 (1977); S.R. No. 95–989, 95th Cong., 2d Sess. 52 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5838, 6299.

Finally, § 524(a)(2) is explained as fol-lows:

"... This paragraph has been expanded over a comparable provision in Bankrupt-cy Act section 14f to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, rela-tives, or employees, harassment, threats of repossession and the like...." H.R. No. 95–595, 95th Cong., 1st Sess. 365–366 (1977); S.R. No. 95–989, 95th Cong., 2d Sess. 80 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5866, 6321.

In the legislative comments to §§ 506(d), 522(c) and 362(c), the Code drafters made their intent clear. This Court finds that unavoided liens are enforceable after the automatic stay is terminated by discharge; thus, creditors with unavoided or unvoided liens retain their in rem rights.

■ What then is the meaning of the conflicting language in § 524(a)(2), that af-ter discharge, creditors are enjoined from efforts to collect from "any property of the debtor"? This language was designed to prevent creditors with avoided liens from harassing naive debtors with groundless threats of repossession. The lien avoidance provision in § 522(f)(2) was created to allow the avoidance of liens secured by nonposses-sory, nonpurchase money security interests in household goods and other vital, exempt-able property. The legislature knew that creditors with such security interests often harassed debtors with threats to repossess their household goods and other necessaries. The legislature also knew that:

"In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditor's true intentions, are coerced into payments they simply cannot afford to make." H.R. No. 95–595, 95th Cong., 1st Sess., 127 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6088.

Section 524(a)(2) was meant to perpetuate the policy of § 522(f) by enjoining creditors with avoided liens from post-discharge harassment. Debtors may not know the consequence of an avoided lien. They may not know that their property can no longer be legally repossessed. Thus, they may be coerced into making postdischarge payments. Section 524(a)(2) merely gives backbone to the discharge of in personam liability and the discharge of avoided in rem liability.

 The Weathers argue that in spite of the legislative comments, the true intent of the Code drafters was that liens, as well as debts, were extinguished after discharge. They argue that if liens survived discharge, a fresh start would be substantially impaired, because in rem actions result in a taking of property essential to a fresh start, such as homesteads.

The Weathers misconstrue the purpose of bankruptcy and the scope of the fresh start policy. When the petition is filed, collection and enforcement efforts are stayed. The debtor is given time to reorganize his finances, without pressure from harassing creditors. Upon discharge, the debtor's personal liability is wiped out on most debts. He is given a fresh start to that extent.

This Court finds that the Code was not designed to give debtors a *head start* by forever immunizing their encumbered property from in rem actions. If such a head start were intended, then it would behoove every homeowner or automobile owner to file a bankruptcy petition. The following sequence of events could then transpire:

1. The debtor would get the benefit of the automatic stay;

2. The debtor would claim his home or car exempt;

3. The debtor would be careful to keep the mortgage and car note payments current during the pendency of the bankruptcy proceeding. Therefore, reaffirmation or redemption would be unnecessary; and relief from stay, foreclosure, replevin or reclamation actions would not lie; [5]

4. As soon as the discharge is granted, the debtors refuse to make any more payments, and in effect, get a "lifetime discharge" from future real estate or chattel mortgage payments.

This Court finds that the drafters of the Code could not possibly have intended this to be inclusive in the meaning of "*fresh start*".

This Court concurs with Judge Walker in *LaFave v. Ford Motor Credit Co.*, 9 B.R. 859, 7 B.C.D. 472, 474 (Bkrtcy.E.D.Mich. 1981), where he stated:

"The Court is of the opinion that equity requires that this Court not sanction the enrichment of the Debtors at the expense of a secured creditor which has proceeded in good faith."

The Court further finds that the Code drafters intended for unavoided liens to survive discharge. To find otherwise, would render the automatic stay and lien avoidance provisions meaningless and would unreasonably expand the scope of the fresh start policy. This Court concludes, therefore, that Polk County's lien survived the

---

**5.** The Weathers argued, at length, that because the Code gives creditors so many predischarge lien preservation methods, creditors who do not avail themselves of the methods should lose their in rem rights after discharge. The Weath-ers ignore the fact that these so-called lien preservation methods are not triggered unless the debtor is in default or the creditor's interest is subject to irreparable injury.

Weathers' discharge; and that Polk County is free to pursue its in rem rights against the real estate.

## II.

█ The defendants filed their Counter-Claim alleging that they should be entitled to reimbursement of the amount of $2,355.00 representing the five monthly payments paid by the defendants to the plaintiff.

This Court finds that the defendants voluntarily made the monthly payments to the plaintiff; that no reaffirmation agreement had been applied for or approved by the Court; that no Proof of Claim had been filed by the plaintiff-creditor, or the defendant-debtor; that the defendants had the benefit of living on the premises during this period, and further, the acceptance of voluntary payments for five months cannot be interpreted to be in violation of the automatic stay provision of the Code. Thus, the plaintiff is not in contempt of court.

## III.

The Court further finds that the defendants were discharged on September 8, 1980, and the case was closed on September 11, 1980; and pursuant to 11 U.S.C. § 362(c)(2)(A) & (C), the automatic stay was terminated at that time, leaving the plaintiff free to enforce its lien against the property herein involved. Therefore, the complaint filed herein is moot.

THIS MEMORANDUM SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW, UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.