In re Danny Luke **SMILEY** a/k/a Danny L. Smiley, Sheryl Smiley a/k/a Sheryl A. Smiley, Debtors.

Danny Luke **SMILEY**, Sheryl Smiley, Plaintiffs,

v.

**ASSOCIATES FINANCIAL SERVICES, Defendant.**

Bankruptcy No. 80–11250.
Adv. No. 80–0660.

United States Bankruptcy Court, D. Kansas.

June 17, 1982.

Jon D. Graves, Wichita, Kan., for debtors.

Brock R. McPherson, Great Bend, Kan., and Greg L. Bauer, Burdett, Kan., for Associates Financial Services.

## MEMORANDUM AND ORDER DENYING COMPLAINT TO AVOID LIEN AND OVERRULING COMPLAINT FOR CONTEMPT

ROBERT B. MORTON, Chief Judge.

### APPEARANCES

On (i) the application of debtors to reopen the estate and the objection of Associates Financial Services thereto; (ii) debtor's complaint to avoid the lien of Associates Financial Services and the latter's objection thereto; and (iii) debtors' complaint for contempt.

### STATEMENT OF THE CASE

Debtors Danny L. Smiley and Sheryl A. Smiley filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code [1] on August 13, 1980. The commencement of the proceeding resulted in the stay of a replevin action previously filed by Associates Financial Services (Associates) in the District Court of Barton County, Kansas seeking recovery and sale of personal property pursuant to a promissory note and security agreement executed by debtors. Associates filed a complaint with this court on September 22, 1980 seeking relief from that automatic stay and for reclamation of the same property. A general notice of abandonment was filed by the trustee in bankruptcy on October 10, 1980, and Associates thereafter voluntarily withdrew its complaint on November 11, 1980. Debtors were granted a discharge on January 12, 1981 and an order approving the trustee's report and closing the estate was entered. The personal property items covered by Associates' lien, which include household fur-

1. 11 U.S.C. § 701 *et seq.*

nishings, were claimed by the debtors as exempt property on Schedule B–4. of their petition.[2]

Subsequent to the closing of the bankruptcy estate, Associates continued with the previously filed Barton County District Court proceeding and obtained a court order awarding it possession of the property covered by its lien. Pursuant to the order, Associates took possession of that collateral on March 20, 1981. Thereafter, debtors/plaintiffs filed an application to reopen the bankruptcy estate and an *ex parte* order reopening the estate was entered on April 17, 1981.[3] Debtors also filed an application to avoid the lien of defendant Associates Financial Services under section 522(f) of the Code and a complaint for contempt against the creditor/defendant. Debtors contend that defendant should be held in contempt for continuing an action against the debtors after debtors' final discharge in bankruptcy and for allegedly violating the discharge injunctive provisions of section 524 of the Code.[4] Defendant objects to the reopening of the estate,[5] and to debtors' complaint to avoid defendant's lien. Defendant also argues that the discharge of debtors did not affect defendant's lien and thus it was not in contempt by an *in rem* enforcement of the lien against the debtors' property.

## MEMORANDUM

### I

In *In re Grimes,* 6 B.R. 943, 7 B.C.D. 576 (Bkrtcy.D.Kan.1980), this court examined the effect of a discharge on the personal liability of a debtor to a creditor holding a valid first mortgage on debtors' exempt homestead. It was there concluded that,

absent an enforceable reaffirmation agreement, the mortgage debt did not survive the discharge even though the mortgagee's *in rem* lien continued.

The instant controversy requires a determination of whether a valid, pre-petition, nonpossessory, nonpurchase-money lien on exempt consumer property that was not avoided in the bankruptcy proceeding survives a discharge in bankruptcy in the absence of a reaffirmation agreement.

Section 524 of the Bankruptcy Code sets forth the effect of a discharge granted under section 727, 944, 1141, or 1328 of the Code. Generally, this section specifies that a discharge voids any judgment obtained at any time with respect to a debt discharged under the above sections to the extent that it is a determination of the *personal* liability of the debtor.[6] Furthermore, section 524(a) insures that a discharge "will operate as an injunction against the commencement or continuation of an action or the employment of process to collect or recover a debt as a *personal liability of the debtor.*" 3 Collier on Bankruptcy paragraph 524.01, at 524–4 (15th ed.1981) (emphasis added). As the same commentator has further observed, these provisions were intended to apply only to the personal liability of the debtor and, although section 524(a)(2) expands the injunction to prohibit creditors' post-discharge attempts to recover from the "property of the debtor", the expansion "does not prevent post-discharge enforcement of a valid lien on property of the debtor existing at the time of the entry of the order for relief, providing such lien was not avoided under the Code. . . . '[P]roperty of the debtor' in section 524(a)(2) necessarily refers to property acquired by the debtor after the filing of the petition com-

2. The validity of Associates nonpossessory, nonpurchase-money lien as it existed prior to bankruptcy is not disputed. File Document 36, Stipulation 19 and Exhibit A attached thereto.

3. File Document 20.

4. Debtors also include as a defendant in the complaint for contempt the attorney for the creditor/defendant. At the hearing on the complaint, however, Associates' attorney was

dismissed as a party to the action. File Document 36, Stipulation 18.

5. As previously stated, an *ex parte* order reopening the estate was filed on April 17, 1981. It is unnecessary for the court, therefore, to consider the objection to the reopening filed by Associates subsequent to the *ex parte* order.

6. 11 U.S.C. § 524.

mencing the title 11 case." 3 Collier on Bankruptcy paragraph 524.01, at 524–14 (15th ed.1981).

This view accords with other sections of the Bankruptcy Code. Section 506(d) provides that even if a lien has not been formally allowed as a secured claim it nonetheless retains its efficacy absent a request for allowance or disallowance under section 502 by a party in interest or a disallowance under the circumstance set out at section 502(e).[7] But "[i]t is not contemplated that the lien will be adversely affected to the extent a secured claim is not allowable unless some party in interest has asked the court to determine and allow or disallow the claim pursuant to the provisions of section 502." 3 Collier on Bankruptcy paragraph 506.07, at 506–12 (15th ed.1979).

> Subsection (d) permits liens to pass through the bankruptcy cases unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 357 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6313. The intent of section 506(d), therefore, is to leave unaffected by the bankruptcy proceeding liens securing claims allowed under section 502 and also liens securing claims not allowable under section 502, but for which no party in interest has requested a determination of allowability, unless such liens are expressly voided under other Code provisions.

Pursuant to section 522(c)(2), exempt property "is not liable during or after the case for any debt of the debtor that arose, . . . before the commencement of the case, except—a lien that is (A) not avoided under section 544, 545, 547, 548, 549, or 724(a) of this title; (B) not voided under section 506(d) of this title."[8] An explanation of this provision is provided in the legislative history: "[t]he bankruptcy discharge will not prevent enforcement of valid liens. The rule of *Long v. Bullard,*[9] 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), is accepted with respect to the enforcement of valid liens on nonexempt property as well as on exempt property." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 361 (1977), U.S.Code Cong. & Admin.News 1978, p. 6317. Thus, as under the Bankruptcy Act, a lien valid under the Code may be enforced against exempt property provided that such lien was not voided or avoided under specified sections of the Code. *See* 3 Collier on Bankruptcy paragraphs 522.27 and 524.01, at 522–65—66 and 524–13—14 (15th Ed. 1981).

In accordance with the above provisions, the court concludes that unavoided liens survive a discharge in bankruptcy and are enforceable against both exempt and nonexempt property once the automatic stay has been terminated upon the granting of the debtor's discharge. Full agreement is here expressed with the holding to such effect of colleague Honorable Benjamin E. Franklin in *In Re Weathers,* 15 B.R. 945, 8

---

7. 11 U.S.C. § 506(d). 3 Collier on Bankruptcy paragraph 506.07, at 506.12 (15th ed. 1980) states that:

> Where a party in interest has not requested that the court make the determination concerning the allowability of the claim pursuant to the allowability provisions of section 502, the lien is not void notwithstanding that it secures a claim against the debtor that would not be an allowed secured claim. This remains true even though no proof of claim has been filed by the holder of the claim or by any other entity entitled under section 501(b) or (c) to file a proof of the claim. Clearly, a claim, proof of which has not been filed, cannot be allowed under the terms of section 502. But the absence of a proof (which is a

> request for allowance of the claim) and of any complaint to determine extent or validity of the claim or the lien securing it (which is a form of request for disallowance of the claim) brings paragraph (1) of section 506(d) into play, thereby relieving the lien from the voiding effect of the lead-in clause of section 506(d).

8. 11 U.S.C. § 522(c)(2).

9. Courts frequently cite *Long v. Bullard, infra,* as authority for the rule that liens on exempt property are enforceable after a discharge in bankruptcy. *Cf. Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935).

B.C.D. 524 (Bkrtcy.D.Kan.1981). Furthermore the observation in *Weathers* seems correct that section 524(a)(2) prohibiting creditors' post-discharge attempts to recover from "the property of the debtor" prohibits pre-petition creditors from proceeding against property acquired by the debtor after the petition is filed and "prevents creditors holding voided liens from harassing naive debtors with groundless threats of repossession." Section 524(a)(2) does not, however, preclude creditors holding unavoided or unvoided liens from exercising their *in rem* rights subsequent to the granting of a discharge.

## II

In reaching this conclusion most careful consideration has been given the contrary view expressed by colleague the Honorable James A. Pusateri in *In Re Williams*, 7 B.C.D. 388, 9 B.R. 228 (Bkrtcy.D.Kan.1981) which is in intradistrict conflict with *Weathers, supra*. The memorandum in *Williams* concludes that, absent reaffirmation, a lien creditor's *in rem* lien rights are extinguished by discharge. It is not altogether clear that such holding was necessary for a decision of the issue before the court.[10] However whether dictum or decretal the conclusion is at variance with the holding of the Honorable Benjamin E. Franklin in *Weathers, supra,* and with decisional law generally.[11] *Williams* appears to go astray in three areas.

First it is indicated that reaffirmation works a post-discharge survival of a valid prepetition lien that was not voided or disallowed in the course of the bankruptcy case. This perception is implicit in the statement of the issue as set out by the *Williams* court:

**10.** The relief sought by the secured creditor was a section 554(b) [11 U.S.C. § 554(b)] abandonment of three scheduled vehicles. However, two theretofore had been exempted to debtors and the third noticed for intended abandonment by the trustee at the closing of the estate. No disposition of the trustee's proposed abandonment was indicated.

Issue

Where reaffirmation has not been sought and approved, what effect does the debtors' discharge have on a creditor's pre-filing lien rights where property is in the debtor's possession through exemption or abandonment or in the trustee's possession prior to closing the estate.
7 B.C.D. at 389, 9 B.R. 228. The same concept is somewhat more explicitly stated in the text:

Reading the Code as a whole, this Court determines that the apparent conflicts between sections thereof can only be resolved by finding that without reaffirmation, liens do not survive discharge.
7 B.C.D. at 390, 9 B.R. 228. To the contrary, reaffirmation has only to do with the debtor's *personal* liability as an individual which otherwise is nonenforceable by reason of the discharge. 11 U.S.C. § 524(a)(2). *Williams* implies that the lien rights of a secured creditor are established with finality when approval of a reaffirmation is obtained from the court. But court approval is not required except in instances of consumer debt not secured by real property. 11 U.S.C. §§ 524(c) and 524(d)(2). Reaffirmation of other debts requires only a finding that the agreement was made before the granting of the discharge. And in both categories of reaffirmation the debtor has the unrestricted right to rescind the agreement within thirty days after it first becomes enforceable. 11 U.S.C. § 524(c)(2). Thus, under *Williams* even though the secured creditor had obtained the timely execution of a reaffirmation coupled with court approval where necessary, the debtor could nonetheless vitiate such lien by the simple expedient of subsequently rescinding the agreement. There is nothing in the Code that suggests lien rights in property are affected by reaffirmation, one way or the other.

**11.** *See Weathers, supra,* for citation of such decisions in the Southern District of California, District of Colorado, Southern District of Florida, Middle District of Georgia, Eastern District of Michigan, Southern District of Ohio and the Western District of Pennsylvania—in addition to the holding by the undersigned in *In re Grimes,* District of Kansas, *supra.*

Second, there is an apparent misreading of 11 U.S.C. § 524(a). That subsection states that a discharge serves as an ongoing injunction against collection of a discharged debt as a personal liability of the debtor or from property of the debtor. Those provisions do not negate the preservation of *in rem* lien rights so carefully protected elsewhere in the Code and positively expressed as the Congressional intent. As has been seen, pursuant to 11 U.S.C. § 506(d), a prepetition lien may survive even though no proof of claim therefor has been filed; 11 U.S.C. § 522(c) extends the post-discharge survivability of liens to exempt property and the related legislative history explicitly states the intended preservation of *all* lien rights.[12] *Williams* sees the section 524(a) injunction against collection of a discharged debt *from property of the debtor* as strong reinforcement for the concept of a concomitant lien extinguishment. The opinion mistakenly states that Collier omits any reference to the phrase.[13] But the text of that treatise is specific on the point:

> [S]ection 522(f) enables the debtor to avoid certain liens including judicial liens, to the extent they impair an exemption. Thus with Congressional intent so clear that valid liens may be enforced, property of the debtor in section 524(a)(2) necessarily refers to property acquired by the debtor after the filing of the petition commencing the title 11 case. 3 Collier on Bankruptcy paragraph 524.01, p. 524–14 (15th ed. 1981) (emphasis added).

Finally, *Williams* advances the rationale that a secured creditor somehow waives, or loses, his lien rights by failing to recover the collateral before a discharge is granted. There is no provision to that effect in the Code, nor may such a consequence be inferred. Moreover the proposition is in conflict with the basic premise of a recent decision of the Tenth Circuit Court of Appeals. In *Rodrock v. Security Industrial Bank,* 642 F.2d 1193, 7 B.C.D. 344 (10th Cir.1981) an attempted section 522(f) avoidance of a lien was denied on constitutional grounds. The lien had been created prior to the enactment of the Code. In so holding the Tenth Circuit Court reaffirmed the fundamental tenet that a consensual lien is *a constitutionally protected right in property,* which in the context of a bankruptcy discharge, is distinct and separate from a personal liability of the debtor:

> The Colorado Bankruptcy Court held that, under *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555 [55 S.Ct. 854, 79 L.Ed. 1593] (1935), Section 522(f)(2) could not be constitutionally applied to a creditor's security interest which came into being prior to the enactment date of the Reform Act. We agree. *Radford* involved an amendment to the Bankruptcy Act which preserved to a defaulting mortgagor of farm property the ownership and enjoyment of his farm and took from the mortgagee rights in specific property held as security. The Supreme Court in *Radford,* speaking through Justice Louis D. Brandeis, declared the amendment to the Bankruptcy Act unconstitutional under the Fifth Amendment. In so doing, the Court recognized that, although Congress, under the bankruptcy power, may discharge a debtor's personal obligation, because, unlike the states, Congress is not prohibited from impairing the obligation of contract, nevertheless Congress would not take for the debtor's benefit rights in specific property acquired by a creditor prior to the amendment of the Bankruptcy Act. In the instant cases, the creditors acquired rights in specific property prior to the enactment of the Reform Act, and, under *Radford,* these vested rights cannot

---

12. *See* excerpt from H.R.Rep. No. 595, 95th Cong. 1st Sess. 361 (1977); S.Rep. No. 989, 95th Cong. 2nd Sess. 76 (1978), quoted in text at Part I above.

13. "The pertinent Collier section does not mention the clause emphasized above and thus does not explain or rectify the commentator's conclusion which is in apparent conflict with the plain meaning of that clause." 7 B.C.D. at 390, 9 B.R. 228.

be taken from the creditor for the benefit of the debtor. It should be noted that, in the instant cases, there would be a complete taking of the secured creditors' property interests.

642 F.2d 1193, 7 B.C.D. at 347. In sum, this member of the court must decline to follow the views and holdings of *Williams.* The opposing conclusions here expressed concur with the rationale of *Weathers, supra,* and with the recent decision *In re Sawyer,* 18 B.R. 661, 8 B.C.D. 1168 (Bkrtcy. D.Idaho 1982). Both courts examined *Williams* and reached the same result as here stated.

### III

■ In the instant case, the creditor/defendant, subsequent to the debtors' discharge and termination of the automatic stay, exercised its *in rem* rights by foreclosing on a validly held lien that had not been voided in the bankruptcy proceeding. Because the court has determined that such liens on debtors' exempt property survive a discharge in bankruptcy, Associates in so acting did not violate an order of this court and, consequently, was not in contempt. That ruling obtains so long as no attempt is made to procure a deficiency judgment or otherwise hold debtors personally liable for the debt.

■ Debtors contend, further, that they were assessed for the cost of the action and that such assessment constitutes a personal liability. Although the costs assessed approach the *de minimus* category the court finds that the secured creditors' rights are limited to recovery of the property *per se* and debtors may not, therefore, be held personally liable for costs of the nonbankruptcy court action.

■ Debtors also seek to avoid the lien of Associates Financial Services pursuant to section 522(f) of the Code. That section permits debtors to avoid nonpossessory, nonpurchase-money liens on certain property to the extent that such lien impairs an exemption to which the debtor is entitled.[14]

The lien avoidance provision is permissive, not automatic, and is to be initiated as a contested matter by motion or application. See Local Rule 23 of the Rules of Practice of the United States Bankruptcy Court for the District of Kansas. Unfortunately, section 522(f) specifies no time within which a motion or application under that section must be filed. Some courts have permitted debtors to avoid liens under section 522(f) even though a discharge has already been granted. *See In re Swanson,* 13 B.R. 851 (Bkrtcy.D.Idaho 1981); and *In re Bennett,* 13 B.R. 643 (Bkrtcy.D.Mich.1981). This court, however, is persuaded that the better rule requires a motion or application under section 522(f) to be filed prior to the granting of a discharge.

To effectively carry out the provisions of the Code and to provide some finality to a bankruptcy proceeding and to the fixed rights of all parties, debtors should be required to timely act to protect their rights, particularly when the rights asserted are for the debtors' benefit. In addressing the issue of when must a debtor act to avoid a lien under section 522(f), the court in *In re Adkins,* 7 B.R. 325, 327 (Bkrtcy.S.D.Cal. 1980), examined section 524(c) of the Code and concluded that:

> That section provides that an agreement between a debtor and a creditor for a reaffirmation must be made at or before the granting to the debtor of his discharge hearing held pursuant to § 524(d) of the Code. . . .

> It seems to me that debtors in order to comply with the purpose and intent of § 524(c), must know with some degree of certainty whether a reaffirmation agreement may have to be negotiated in order to permit the retention of property pledged as security before the grant of the discharge. Otherwise it may be too late to negotiate a reaffirmation agreement.

> Therefore, in order to effectively carry out the provisions of the Code and to obtain finality of a determination of the

---

**14.** 11 U.S.C. § 522(f).

rights of all parties, it seems to me that a debtor must file a complaint to avoid a lien under section 522(f) at or before the discharge hearing. At that point there is sufficient time to negotiate a reaffirmation agreement or continue the discharge hearing to permit such negotiation.

*See also In re Porter,* 11 B.R. 578 (Bkrtcy. W.D.Okl.1981); and *In re Krahn,* 10 B.R. 770 (Bkrtcy.E.D.Wis.1981).

■ The court concurs with the decision of the court in *Adkins* and determines that motions or applications filed under Local Rule 23 to avoid liens under section 522(f) must be filed prior to the granting of the debtor's discharge. At no time prior to discharge did the instant debtors undertake any action to avoid Associates' lien. Not until the defendant had, in reliance on debtors' inactivity, expended the time and money required to foreclose its lien in state court did the debtors tardily assert their rights under section 522(f). The court concludes that debtors' complaint to avoid the lien of Associates Financial Services is out of time and must, therefore, be denied.[15]

In accordance with the above findings and conclusions, the court determines (i) the debtors' application to reopen the estate was previously determined by an *ex parte* order reopening the estate filed on April 17, 1981; (ii) debtors' complaint to avoid the lien of creditor/defendant Associates Financial Services must be denied; and (iii) the complaint of debtors to hold said creditor/defendant in contempt is to be likewise denied.

### ORDER

Based upon the foregoing memorandum which constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 752 and Rule 52(a) Federal Rules of Civil Procedure

IT IS ORDERED that the relief sought, both in debtors' complaint to avoid the lien

of creditor/defendant Associates Financial Services and the complaint of debtors to hold said creditor/defendant in contempt is denied and judgment for the defendant is granted in each instance.

Dated at Wichita, in said District, this 17th day of June, 1982.

---

**15.** There is no provision in § 522(f) for avoiding liens on automobiles unless the vehicle qualifies as a "tool of the trade". The court observes that the debtors have not exempted their automobile under the Kansas tools of the trade exemption, Kan.Stat.Ann. § 60–2304(5) (1980 Supp.), and, therefore, would not have been entitled to void the lien on the automobile had their application been timely filed.