634 A.2d 645

**PNC BANK, NATIONAL ASSOCIATION, Formerly Pittsburgh National Bank, A National Banking Association, Appellant,**

v.

**Gaspare BALSAMO and Carla Balsamo, His Wife, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 15, 1993.

Filed Dec. 2, 1993.

Joel B. Gold, Pittsburgh, for appellant.

John F. Disalle, Washington, for appellees.

Before KELLY, POPOVICH and BROSKY, JJ.

KELLY, Judge:

In this appeal we must decide whether the trial court erred in striking the timely writ of revival brought by appellant, PNC Bank, to revive its judicial lien on the residence of appellee, Carla Balsamo. We hold that the trial court erred in "striking" appellant's judgment lien which was not discharged by operation of law through appellee's bankruptcy proceedings, 11 U.S.C.A. § 101 *et seq.* nor under the aegis of the

Deficiency Judgment Act, 42 Pa.C.S.A. § 8103 *et seq.* nor by the doctrine of accord and satisfaction. Hence, we reverse.

The matter came before the trial court on the following stipulated facts:

1. On November 8, 1984, Pittsburgh National Bank extended a commercial loan to Defendant [named appellees]. The loan was evidenced by a Demand Note and Mortgage of even date for the certain commercial real estate in question.

2. In October of 1985, as a result of Defendant's [sic] [appellees'] default on the Demand Notice, Pittsburgh National Bank entered judgment against Defendants [appellees] in the principal amount of the Note, plus interest, costs and attorney's fees.

3. By Deed dated November 23, 1987, and recorded in the Recorder's Office of Washington County at Deed Book Volume 2310, Page 414, Defendants [appellees] conveyed to Pittsburgh National Bank, a deed in lieu of mortgage foreclosure regarding property located in Canonsburg, Washington County, Pennsylvania, being the former "Portofino's Restaurant," located at 26 East Pike Street, Canonsburg, Pennsylvania.

4. On February 11, 1988, the Defendant [appellee], Carla Balsamo filed a Petition in Bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania as Case No. 88–00359.

5. Said Bankruptcy Petition filed by Defendant [appellee] listed Pittsburgh National Bank as a secured creditor.

6. No action was taken by any entity during the bankruptcy to avoid Plaintiff's [appellant's] judgment lien.

7. On June 29, 1988, an Order of Discharge was entered by the Honorable Judith K. Fitzgerald, Bankruptcy Judge, for the Petitioner [appellee], Carla Balsamo.

8. On May 24, 1990, Pittsburgh National Bank entered judgment against a garnishee of Gaspare Balsamo,[1] in the

1. Gaspare Balsamo and Carla Balsamo were husband and wife when appellant extended the commercial loan to them on November 8, 1984 and when default on that loan occurred in October, 1985. The couple

amount of $3,500.00, entered in the Court of Common Pleas of Blair County, Pennsylvania, at SUR No. 420JDG 1988.

9. In consideration of the sum of TWO THOUSAND FIVE HUNDRED and no/100 ($2,500.00) DOLLARS, the judgment against Gaspare Balsamo has been settled and satisfied.

10. At no time has Pittsburgh National Bank sought a Petition to Set Fair Market Value, pursuant to 42 Pa.C.S.A. § 8103.

11. The property was subsequently sold by Pittsburgh National Bank for $125,000.00.

12. On September 28, 1990, Pittsburgh National Bank commenced a proceeding to revive the judgment entered at 4 October Term, 1985 D.S.B., at No. 90–4609.

■ In response to appellant's service of the writ, appellee, Carla Balsamo, filed both an answer and new matter to the writ, and a petition to strike the judgment and a rule to show cause why the judgment should not be stricken.[2] Following appellee's amendments to her answer and petition to strike the judgment as discharged, appellant's answer thereto, and a hearing on the petition to amend, the parties agreed to submit the matter to the trial court on stipulated facts, stipulated issues, and briefs. On September 24, 1991, the parties concluded their stipulations and briefs in support of their respective positions. By order dated February 10, 1993, the trial court struck appellant's writ of revival as discharged through appellee's bankruptcy proceedings. Appellant did not file post-verdict motions.[3] This timely appeal followed.

Appellant raises the following issues for our review:

subsequently divorced. Gaspare Balsamo conveyed to Carla Balsamo, by deed dated April 22, 1986, his right, title and interest in the commercial real estate securing the loan. Although a named appellee for other reasons, Gaspare Balsamo was not a party to the petition to strike the writ of revival or the appeal therefrom.

2. Alternatively, appellee has called this petition a "petition to strike and/or open judgment."

3. The clarifying Note dated in 1990 to Pa.R.Civ.P. 227.1(c) provides in part:

WHEN IN 1985 A JUDGMENT WAS ENTERED BY APPELLANT AGAINST APPELLEES AND THE LIEN OF JUDGMENT ATTACHED TO TWO PARCELS OF REAL PROPERTY: DOES APPELLANT'S ACCEPTANCE OF A DEED IN LIEU OF MORTGAGE FORECLOSURE ON NOVEMBER 23, 1987 FOR ONE PARCEL ONLY ENCUMBERED BY A MORTGAGE AND JUDGMENT LIEN CHANGE THE JUDGMENT LIEN ON THE REMAINING PARCEL FROM AN *IN REM* PROCEEDING TO AN *IN PERSONAM* PROCEEDING?

A *motion for post-trial relief may not be filed* to orders disposing of preliminary objections, motions for judgment on the pleadings or for summary judgment, motions relating to discovery *or other proceedings which do not constitute a trial. See U.S. National Bank in Johnstown v. Johnson,* 506 Pa. 622, 487 A.2d 809 (1985).

A motion for post-trial relief may not be filed in a case stated. A *motion for post-trial relief may not be filed to matters governed exclusively by the rules of petition practice.*

*See Coco Brothers v. Bd. of Public Educ.,* 530 Pa. 309, 608 A.2d 1035 (1992) (holding that post-trial motions were impermissible in a case commenced by a judgment creditor to enforce a judgment where the trial court marked the judgment satisfied based on pleadings and argument of counsel without taking testimony).

Appellee characterizes this appeal as one from a judgment entered pursuant to the submission of an agreed statement of facts and concludes that the appeal is permissible under the law as set forth in *Wertz v. Anderson,* 352 Pa.Super. 572, 508 A.2d 1218 (1986), *appeal denied,* 514 Pa. 625, 522 A.2d 51 (1987): In a "case stated," the parties submit an agreed statement of facts and request entry of judgment by the court upon the facts as stated, such judgment being final and appealable, if the parties reserve the right to appeal in their agreed statement. Post-verdict motions are unnecessary. *Id.* at 577, 508 A.2d at 1220. *See also Miller v. Kramer,* 424 Pa.Super. 48, 621 A.2d 1033 (1993).

Appellant contends, however, that the matter proceeded before the trial court on stipulated facts and issues and was resolved procedurally in favor of appellee's petition to strike the judgment lien. As such, under *Coco Brothers v. Bd. of Public Educ., supra,* the proceedings did not constitute a trial. Accordingly, motions for post-verdict relief were prohibited. We agree.

Instantly, appellant commenced a proceeding under the rules governing the revival of judgments, Pa.R.Civ.P. 3025 *et seq.* Based on the pleadings, stipulated facts, and briefs submitted by counsel, the trial court struck the writ of revival as having been discharged on June 29, 1988 at the conclusion of appellee's voluntary petition under Chapter Seven of the United States Bankruptcy Code. We conclude, therefore, that the proceedings were procedural in nature, akin to *Coco Brothers v. Bd. of Public Educ., supra.* Thus, in this action as well, Rule 227.1(c) motions for relief were not permissible.

DOES THE DISCHARGE IN BANKRUPTCY OF AP-
PELLEE, WHICH DISCHARGED HER PERSONAL LI-
ABILITY TO APPELLANT ALSO OPERATE TO PRE-
VENT PNC BANK FROM ENFORCING THE JUDG-
MENT LIEN ON REAL PROPERTY OF APPELLEE
WHEN THE JUDGMENT LIEN WAS NOT AVOIDED
DURING THE BANKRUPTCY?

DOES THE DEED IN LIEU OF MORTGAGE FORE-
CLOSURE DATED NOVEMBER 23, 1987 REQUIRE AP-
PELLANT TO PETITION TO SET FAIR MARKET
VALUE, IN ACCORDANCE WITH 42 Pa.C.S.A. SEC-
TION 8103, IN ORDER TO ENFORCE THE JUDG-
MENT BEYOND SIX MONTHS AFTER THE DATE OF
THE DEED?

DOES OFFER AND ACCEPTANCE OF THE DEED IN
LIEU OF FORECLOSURE OPERATE AS AN ACCORD
AND SATISFACTION OF THE JUDGMENT LIEN BY
OPERATION OF LAW?

IS THE PETITION TO STRIKE APPELLANT'S WRIT
OF REVIVAL PRESENTED IN FEBRUARY, 1991,
BARRED BY APPELLEE'S FAILURE TO ACT
PROMPTLY IN REQUESTING THE COURT TO OPEN
AND/OR STRIKE THE JUDGMENT?

Appellant's Brief at 2.

Consideration of the merits of this appeal must wait until we decide whether the appeal is properly before this Court, although neither party has raised this issue. *Joseph Palermo Development Corp. v. Bowers,* 388 Pa.Super. 49, 564 A.2d 996 (1989).

The appealability of an order is a question of jurisdiction and may be raised *sua sponte. French v. United Parcel Service,* 377 Pa.Super. 366, 369, 547 A.2d 411, 413 (1988). It is well-established that an appeal to this court will lie only from a final order, unless a right to appeal is expressly granted by statute or rule of court. *Id.; Fried v. Fried,* 509 Pa. 89, 93, 501 A.2d 211, 213 (1985) (citations omitted). This "final judgment" rule promotes the fair and efficient admin-

istration of justice by discouraging multiple appeals in a single case and the consequent protraction of litigation. *French, supra,* 377 Pa.Super. at 369, 547 A.2d at 413 (citations omitted).

*Blackman v. Katz,* 390 Pa.Super. 257, 261, 568 A.2d 642, 644 (1990).

On March 31, 1989, the Pennsylvania Supreme Court amended Pa.R.A.P. 311(a)(1) removing the right to an immediate interlocutory appeal from an order striking a judgment. As amended, the rule now states:

**(a) General Rule.** Except as otherwise prescribed by general rule, an appeal may be taken as of right from:

(1) *Affecting Judgments.* An order refusing to open, vacate or strike off a judgment. If orders opening, vacating, or striking off a judgment are sought in the alternative, no appeal may be filed until the court has disposed of each claim for relief.

Pa.R.A.P. 311(a)(1). Thus, under the amended rule, appellant has the right to an appeal from an order denying a petition to strike or open a judgment, *Ryan v. Johnson,* 522 Pa. 555, 564 A.2d 1237 (1989), but no appeal as of right from an order granting a petition to strike or open a judgment. Pa.R.A.P. 311(a)(1). Faced with the difficulty that a strict application of this rule would, by definition, foreclose appellant's right to appeal absent a petition for review, we must determine whether the order from which this appeal was taken was for all practical purposes final and appealable.

Whether an order is final and appealable cannot necessarily be ascertained from the face of a decree alone, nor simply from the technical effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications. We follow the reasoning of the United States Supreme Court that a finding of finality must be the result of a practical rather than a technical construction. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949).

*Bell v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 228, 348 A.2d 734, 735 (1975).

 The order striking appellant's judgment lien on appellee's petition to strike or open the judgment has all the practical aspects of finality to make it a final, appealable order. The most important aspect is, quite simply, that the order at issue put appellant out of court. Thus, we are of the opinion that striking the judgment in this case was a procedural misstep. A petition to strike a confessed judgment is proper only when the defect in judgment appears on the face of the record. *Davis v. Woxall Hotel, Inc.,* 395 Pa.Super. 465, 577 A.2d 636 (1990); *West Chester Plaza Associates v. Chester Engineers,* 319 Pa.Super. 196, 465 A.2d 1297 (1983). In order to open a confessed judgment, a party must act promptly, allege a meritorious defense and present sufficient evidence that the defense creates issues for a jury. *Liazis v. Kosta, Inc.,* 421 Pa.Super. 502, 618 A.2d 450 (1992). However, the only cognizable defenses in a proceeding to revive a judgment lien [4] are that the judgment does not exist, has been paid or has been discharged. *Brooks v. Rudolph,* 371 Pa. 21, 88 A.2d 907 (1952); *Cusano, et al. v. Rubolino, et al.,* 351 Pa. 41, 39 A.2d 906 (1944). *See also Eiffert v. Giessen, et al.,* 339 Pa. 60, 14 A.2d 130 (1940) (holding that, where the original judgment was not impeached, defenses on a writ to revive the judgment are limited to those arising after entry of the judgment, such as payment or other discharge).

A panel of this Court considered a similar situation in *Triangle Building Supplies and Lumber Co. v. Zerman,* 242 Pa.Super. 315, 363 A.2d 1287 (1976) *(en banc).* In response to a praecipe for writ of revival, the appellants in *Triangle* filed a petition which the trial court treated in substance as an answer to the praecipe for a writ and as a petition to strike and/or open the judgment sought to be revived. In *Triangle,*

---

**4.** Effective April 1, 1965, the practice of reviving judgments by writ of scire facias was abolished, and the writ of revival was substituted in its place. Pa.R.C.P. Nos. 3025–3049. However, the substantive law relating to the revival of judgments is not affected. *Triangle Building Supplies and Lumber Co. v. Zerman, infra* 242 Pa.Super. at 319 n. 5, 363 A.2d at 1289 n. 5.

the appellants argued that the writ of revival opened the door to attacks on the merits of the original judgment. The *Triangle* Court rejected this assertion, reiterating the well-established law that in a proceeding to revive a judgment, the courts will not entertain any inquiry into the merits of the original judgment. *Id.* at 319, 363 A.2d at 1289. Because the appellants in *Triangle* failed to assert a defense cognizable in a proceeding to revive a judgment, this Court affirmed the trial court's dismissal of appellants' answer filed in the revival proceeding.

In the instant case, appellee mischaracterized her response to appellant's praecipe for writ of revival. While captioned as an answer to the writ of revival and a petition to strike or open the judgment, appellee actually raised the defense of discharge which is a cognizable defense in revival proceedings. The trial court was correct to entertain appellee's defense. We conclude, however, that the trial court's disposition of the matter by striking the writ of revival was improper, and in so striking caused the resulting consternation regarding the appealability of its order. Inasmuch as appellant's rights have been defeated, we will not allow a procedural misnomer, and the order embodying that error, to defeat appeal. From the face of the decree, it would appear that the trial court's order is interlocutory and unappealable under Pa.R.A.P. 311(a)(1). Nevertheless, under the standard set forth in *Bell v. Beneficial Consumer Discount Co., supra,* we hold that, as a practical matter, the order at issue is final, appealable, and properly before us for a review of its merits.

■ With regard to appellant's issues in this case, our scope of review encompasses the trial court's conclusions of law; our duty is to determine whether the trial court's conclusions of law were free from legal error. *2401 Pennsylvania Avenue v. Federation of Jewish Agencies of Greater Philadelphia,* 507 Pa. 166, 489 A.2d 733 (1985). The trial court's conclusions of law are not binding on the appellate court and are subject to reversal where there has been an erroneous application of the law to the facts of the case. *Id.; Cowen v. Krasas,* 438 Pa. 171, 264 A.2d 628 (1970).

Appellant avers that its judgment lien on appellee's residence was not discharged by operation of law through appellee's bankruptcy. Moreover, appellant contends, the deed in lieu of foreclosure transaction on the commercial property did not transform, by operation of law, its judgment lien on the residential property from an *in rem* to an *in personam* action such that the lien became the type of personal liability automatically discharged by appellee's bankruptcy. We agree.

Judgment liens are a product of centuries of statutes which authorize a judgment creditor to seize and sell the land of debtors at a judicial sale to satisfy their debts out of the proceeds of the sale. The judgment represents a binding judicial determination of the rights and duties between the parties, and establishes their debtor-creditor relationship for all the world to notice when the judgment is recorded in a Prothonotary's Office. When entered of record, the judgment also operates as a lien upon all real property of the debtor in that county. 42 Pa.C.S. Sections 4303(a)(b), 1722(b) and 2737(3).

The judgment lien represents security for the underlying debt, *Commonwealth v. Meyer*, 169 Superior Ct. 40, 82 A.2d 298 (1951), and conveys a right of execution to the judgment creditor in satisfaction of his debt. The judgment not only affects all real property owned by the debtor, but extends to his equitable interests, *Auwerter v. Mathiot*, 9 Serg. and R. 397 (1823) and beneficial interests as well[,] *Davis v. Commonwealth Trust Company*, 335 Pa. 387, 7 A.2d 3 (1939). The existence of a judgment lien prevents a debtor from encumbering or conveying any property he might own in such a way as to divest the effect of the judgment, while also preventing later lienholders from satisfying their debt without first paying the earlier lien. The judgment lien thus constitutes a liquidated claim, *Educational Society v. W.D. Gordon*, 310 Pa. 470, 166 A. 499 (1933), which has value to the judgment creditor. The judgment can be assigned, pledged, or used as collateral and is a valuable form of property.

... It is true that a judgment lien is called a general lien—unlike a mortgage which is a specific lien against a particular piece of real property. Such has been the recognized law in this Commonwealth for some time. *Ruth's Appeal,* 54 Pa. 173 (1867). Our law recognizes that a judgment is a hold on all the debtor's real estate without discrimination, but our courts have consistently concluded that the judgment creditor is not interested in the property as property, but only in the lien. As was said in *Cover v. Black,* 1 Barr 493 (1845): "The judgment creditor has neither *jus in re* nor *ad rem* as regards the (debtor's) property. He has a lien, and the law gives a right to satisfaction out of the property, and that is all." *Grevermeyer v. Southern Mutual Insurance Company,* 62 Pa. 340 (1869).

While judgment-creditors have neither estate nor right (sic) in the lands of their debtor, it has never been the law that they do not have any protectable property interest. *Witmer Appeal,* 45 Pa. 455 (1863). Quite to the contrary, the judgment itself is property which may be defended by forced judicial sale of the debtor's land. It is quite properly said that judgment creditors are interested in the property of the debtor only because they have a right to seize it, sell it, and satisfy the debt from the proceeds of the sale. It is this very right of execution which gives a judgment lien its effectiveness and great value. Any judicial proceeding which impairs or diminishes the value and reach of the judgment certainly affects its holder adversely.

In addition, we note that it is important to separate concepts of secured and unsecured creditors on the one hand from the concepts of general and specific security interests or liens on the other.... Mortgages are liens—and hence property interests—on specific assets. A judgment is also a lien—and hence a property interest—covering all real property of the debtor against whom it is entered. Judgments are no less property interests because they are general security interests, attaching to all of a debtor's real property within the territorial jurisdiction of the court among whose records they are filed, rather than to a specific parcel.

*In re Upset Sale, Tax Claim Bureau of Berks County*, 505 Pa. 327, 334–36, 479 A.2d 940, 943 (1984). Scholars differ on the nomenclature utilized to distinguish mortgage holders from judicial lien holders,[5] *see id.*, dissent by Justice Zappala. For bankruptcy law purposes, however, a judicial lien on a debtor's residence arising from a properly recorded confessed judgment against the defaulting debtor, is a protectable property interest which the debtor must take affirmative steps to avoid in the bankruptcy action. *See In re Hall,* 22 B.R. 701 (Bankr.E.D.Pa.1982) (where debtor's counsel failed to make application to avoid judicial liens while the debtor's bankruptcy case was open, the liens survived the discharge).

[T]he discharge injunction of [11 U.S.C.] § 524(a)[FN2] does not prevent a secured creditor from enforcing a valid prepetition lien which was not avoided during bankruptcy. *See, e.g., Chandler Bank of Lyons v. Ray,* 804 F.2d 577 (10th Cir.1986) (creditor's in rem action to recover its security interest is not precluded by § 524); *In re Walls,* 125 B.R.

---

**5.** A judicial lien is defined as a lien created by judgment, levy, sequestration, or other legal or equitable process or proceedings whereas a mortgage lien is created by agreement between or among the parties. *Burkholder v. National Central Bank,* 11 B.R. 346, 348 (Bankr.E.D.Pa. 1981). Judicial liens and property mortgages are not functionally equivalent under the Bankruptcy Code which provides at least two vehicles for avoiding a judicial lien on a debtor's property. The first and foremost provision under the Bankruptcy Code for avoiding a judicial lien is 11 U.S.C. § 506 which provides, in essence, for the determination of the extent to which a lien is secured, undersecured or unsecured. Another vehicle to avoid a judicial lien on residential property is 11 U.S.C. § 522(f), wherein the judicial lien can be avoided to the extent the lien impairs the debtor's "homestead" exemption. The proper forum for the avoidance of the kind of lien at issue in this case is the Bankruptcy court, particularly in light of appellee's defense of discharge through bankruptcy. *See In re Hermansen,* 84 B.R. 729 (Bankr.D.Colo.1988) (the correct way to establish effect, extent and value of a judicial lien not avoided under the 11 U.S.C. § 522(f) homestead exemption is by the use of 11 U.S.C. § 506 governing the status of the claim as secured, undersecured or unsecured and 11 U.S.C. § 502 governing the allowance of claims against or interest in the debtor's property). *Accord, In re Prestegaard,* 139 B.R. 117 (Bankr. S.D.N.Y.1992); *In re Fisher,* 117 B.R. 191 (Bankr.W.D.Pa.1990). *See also Beneficial Consumer Discount Co. v. Hamlin,* 263 Pa.Super. 393, 398 A.2d 193 (1979) *(en banc )* (a discharge in Bankruptcy proceedings cannot affect pre-bankruptcy liens unless the liens are specifically invalidated by the Bankruptcy Code).

908 (Bankr.D.Del.1991) (post-discharge attempt to enforce pre-bankruptcy judgment lien does not violate § 524 and *In re Weathers*, 15 B.R. 945 (Bankr.D.Kan.1981) (the discharge injunction effected by § 524(a) does not apply to a creditor's post-discharge action to recover property subject to a valid pre-bankruptcy lien).

[FN2] § 524. Effect of discharge

(a) A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such a judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(c)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived. . . .

However, the Bankruptcy Code, in § 524(a), provides that a discharge only acts as an automatic permanent injunction against a creditor's attempts to recover those debts which were a personal liability of the debtor prior to bankruptcy. *See In re Hughes*, 95 B.R. 20, 22 (Bankr.E.D.N.Y.1989); [*In*

*re* ] *Pierce,* 29 B.R. [612,] 615 [ (Bankr.E.D.N.C.1983) ] (creditor's attempt to collect underlying debt as a personal liability of debtor, *in addition to* pursuing its pre-bankruptcy lien on property, violates § 524); and *In re Harvey,* 88 B.R. 863, 865 (Bankr.N.D.Ill.1988) (creditor would violate discharge injunction if it were seeking a personal deficiency judgment against debtor pursuant to foreclosure proceedings where the entire debt secured by the collateral was provided for in the debtor's Chapter 13 plan). The policy underlying Chapter 7 of the Bankruptcy Code is to implement a "fresh start" for a debtor. The legislative history indicates that § 524 was enacted to further this goal by saving a debtor the needless expense of defending actions to collect discharged debts. 3 COLLIER ON BANKRUPTCY, P. 524.01, at 524–5 to 524–8 (15th ed. 1991). Enforcement of § 524 may include holding violators in contempt of court for attempts to collect discharged debts. *See Harvey, supra,* 88 B.R. at 865–66; *In re Barbour,* 77 B.R. 530, 532 (Bankr.E.D.N.C.1987); and *In re Kaping,* 13 B.R. 621 (Bankr.D.Or.1981). It may also include sanctions such as awarding the debtor costs for having to defend against such actions. *See Pierce, supra,* 29 B.R. at 615.

The *Pierce* court explains that, despite the language contained in § 524(a)(3) referring to "property of the debtor" subject to the discharge injunction, only property which is not subject to a valid lien is removed entirely from the grasp of creditors seeking satisfaction of pre-bankruptcy debts. [*In re Pierce,*] 29 B.R. at 614. Encumbrances on a debtor's property have been distinguished from personal liabilities of the debtor with regard to dischargeability in bankruptcy because effectuation of the policy underlying bankruptcy does not require that the former be extinguished. *See Weathers, supra,* 15 B.R. at 949. *See also* [*Estate of* ] *Lellock* [*v. Prudential Ins. Co.*], 811 F.2d [186], 189 (3d Cir.1987) (permitting a secured creditor's valid pre-petition lien to be discharged would be "clearly repugnant to bankruptcy policy"). It has been said that, if valid liens on property were extinguished along with personal debts and

liabilities, this would effect more of a "head start" than a "fresh start," and such a policy could have the detrimental effect of unreasonably encouraging homeowners and other property owners to file bankruptcy petitions. *Weathers, supra,* 15 B.R. at 951. Therefore, the scope of the discharge injunction, intended to afford a debtor freedom from future harassment concerning discharged debts, does not reach actions to enforce valid pre-petition liens. *Id.* at 951, 952.

*In re McNeil,* 128. B.R. 603, 607–08 (Bankr.E.D.Pa.1991). *See also In the Matter of Arevalo,* 142 B.R. 111 (Bankr.D.N.J. 1992) (discharge in bankruptcy, in and of itself, does not extinguish a creditor's valid lien on the property of the debtor). Significantly, the pre-petition lienholder has no affirmative duty to preserve its lien during the debtor's bankruptcy proceedings except to defend against the debtor's or the trustee's attempts to avoid the lien. *In re McNeil, supra* at 607.

Appellee asserted, and the trial court affirmed, that appellant's lien on the residential property was discharged as a personal liability by virtue of appellee's discharge through bankruptcy proceedings. This conclusion was erroneous on the facts before the court. Appellee's general bankruptcy discharge did not affect appellant's valid lien on the residential property, absent a showing that appellee pursued avoidance of that lien during her bankruptcy case. On the contrary, the parties stipulated that no action was taken by either party during the bankruptcy to avoid appellant's judgment lien. *See* Stipulated Fact, No. 6. Accordingly, appellant's lien survived the bankruptcy proceedings.[6]

**6.** Relevant case law suggests that appellee is not precluded from petitioning the Bankruptcy Court to reopen her Chapter 7 proceedings to effect an avoidance of appellant's lien on her residence under 11 U.S.C. §§ 502, 506, 522(f). *See, e.g., In re Quackenbos,* 71 B.R. 693 (Bankr. E.D.Pa.1987) (holding that Chapter 7 debtor could reopen proceedings to initiate lien avoidance process where there was no evidence that creditor sought to enforce its lien; delay, by itself, is insufficient to support a finding of prejudice which would subject the debtor's right to reopen the bankruptcy case to the doctrine of laches); *In re Hall,* 22 B.R. 701 (Bankr.E.D.Pa.1982) (unless equitable considerations would

 Appellant's next contention is that the trial court erred in suggesting that the Deficiency Judgment Act, 42 Pa.C.S.A. § 8103 applied to the "deed in lieu of foreclosure" transaction between the parties following the mortgage default on the commercial property. Although not necessary to its decision, the trial court stated that, in its opinion, appellant's only recourse to recover the deficiency on the mortgage debt owed on the commercial property was to proceed via the Deficiency Judgment Act. Trial Court Opinion at 4. Appellant posits that the Deficiency Judgment Act, by its language and previous interpretation, has no application to "deed in lieu of foreclosure" transactions. Therefore, appellant's failure to petition the court to fix the fair market value of the commercial property within six months of the "deed in lieu of foreclosure" transaction did not discharge appellee's debt by operation of law. We agree.

 The Deficiency Judgment Act in relevant part provides:

### § 8103. Deficiency judgments

(a) **General rule.**—Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court having jurisdiction to fix the fair market value of the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered.

(d) **Action in absence of petition.**—If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment

dictate otherwise, Chapter 7 bankruptcy case should be reopened for consideration of debtor's application to avoid a judicial lien).

creditor for the payment of the debt, or any person interested in any real estate which would, except for the provisions of this section, be bound by the judgment, may file a petition, as a supplementary proceeding in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by statute after the sale to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 Pa.C.S.A. § 8103(a), (d). The Deficiency Judgment Act applies whenever real property has been sold in execution proceedings for a sum less than the amount of the judgment, interests and costs, and purchased by the judgment creditor, the mortgagee in the underlying foreclosure. *First National Consumer Discount Co. v. Fetherman,* 515 Pa. 85, 527 A.2d 100 (1987). The Act only applies if property is sold directly or indirectly to the judgment creditor. *Bank Leumi: Le–Israel v. Zimmerman,* 396 Pa.Super. 409, 578 A.2d 967 (1990), *appeal denied,* 527 Pa. 627, 592 A.2d 1295 (1991).[7] Where a judgment creditor purchases the debtor's realty at a sheriff's sale and fails to petition the court to fix the fair market value of the property within the six month time limit prescribed by the statute, the judgment creditor is deemed to have received full satisfaction in kind of the underlying debt. *First National Consumer Discount Co. v. Fetherman, supra* at 97, 527 A.2d at 105. If no petition is filed to fix the fair market value of the property, the judgment debtor, and certain other interested parties mentioned in the statute, have the right to petition the court to order the judgment marked satisfied. *Id.*

At bar, the parties have agreed that appellant did not proceed, within six months of the "deed in lieu of foreclosure" transaction, to petition the court to fix the fair market value of the commercial property. The controversy in this case then

7. In *Bank Leumi: Le–Israel v. Zimmerman, supra,* this Court held that the Deficiency Judgment Act did not apply where a third party was the purchaser of the foreclosed property at a sheriff's sale.

centers on whether appellant, by accepting the deed to the commercial property in lieu of foreclosing on the property, directly or indirectly, became a "purchaser" of the property,[8] thereby triggering the concomitant requirements of the Deficiency Judgment Act. Stated alternatively, we must decide whether, on the facts of this case, we can find some reason to apply the Deficiency Judgment Act, which is not applicable on its face, because there was no foreclosure proceeding.

"The policy of the Deficiency Judgment Act is to protect debtors against the risk of a mortgagee obtaining a 'double recovery'." *Marine Midland Bank v. Surfbelt, Inc.*, 718 F.2d 611, 615 (3d Cir.1983). A "double recovery" occurs where the mortgagee purchases the mortgaged property for less than fair market value, usually for costs, at the foreclosure sale and then pursues the debtor for the deficiency. *Id.* By so doing, the creditor, in effect, could recover both the property and the full amount of the debt; this the Act will not allow.

"The intention, as the title and contents of the Act indicate, was to protect judgment debtors whose real estate is sold in execution, by requiring the [creditor] to give credit for the value of the property [the creditor] purchased at his execution and not merely to credit the price at which [the property] was sold." *Union Trust Co. of New Castle v. Tutino*, 353 Pa. 145, 44 A.2d 556 (1945). Thus, the Deficiency Judgment Act treats the purchase of the mortgaged property by the judgment creditor at a sheriff's sale as a payment of the debt owed to the extent of the fair market value of the property as though the creditor had received that sum in cash, less the costs of foreclosure. *Dearnley v. Survetnick*, 360 Pa. 572, 63 A.2d 66 (1949).

8. This Court, in *Reliable Savings and Loan Assoc. of Bridgeville v. Joyce*, 385 Pa.Super. 536, 561 A.2d 804 (1989) examined the concept of an "indirect" purchaser in the context of a sheriff's sale where the judgment creditor was the successful bidder. Even though the successful bidder assigned its right to possession of the property to a third party before taking legal title to the property, we held that the judgment creditor was an "indirect" purchaser of the property such that the Deficiency Judgment Act applied.

Instantly, the "deed in lieu of foreclosure" transaction was intended to obviate the need of a foreclosure sale. By stipulation No. 3, the parties agreed that this transaction was in lieu of foreclosure. Thus, appellee was spared the costs of the foreclosure proceedings. The property was later sold by appellant for $125,000.00. *See* Stipulated Fact, No. 3. Appellee was credited for this sale price. Thus, the policy behind the Deficiency Judgment Act was fully served and at a savings to appellee, because the sale price was not reduced by any costs of foreclosure proceedings. What has occurred in the instant case is not, therefore, the type of situation the Deficiency Judgment Act was designed to address.[9] Under the facts of this case, we conclude, it would work an injustice to sanction appellant for failing to comply with the Deficiency Judgment Act.

Additionally, the doctrine of accord and satisfaction, submits appellant, cannot provide the basis for the debt discharge which appellee claims resulted from the "deed in lieu of foreclosure" transaction. Appellant avers that the transaction lacks the requirements for accord and satisfaction because no dispute existed as to the debt. Absent record facts establishing a genuinely disputed debt, appellant concludes, its taking title to the commercial property prior to resale did not effect an accord and satisfaction thereby discharging appellee's obligation to account for any deficiency. We agree.

The elements of accord and satisfaction are: (1) a disputed debt (2) a clear and unequivocal offer of payment in full satisfaction and (3) acceptance and retention of payment by the offeree. *Law v. Mackie,* 373 Pa. 212, 95 A.2d 656 (1953). It has been held, however, that partial payment of a *liqui-*

9. Our research discloses only one case in which a court of this Commonwealth addressed the question of whether the Deficiency Judgment Act applies to "deed in lieu of foreclosure" transactions. In *Gettysburg Nat'l Bank v. Saxe,* 29 D. & C.3d 165 (1983), the court held that the Deficiency Judgment Act does not apply to a transaction in which a mortgagee accepts a deed in lieu of foreclosure because the purpose of the deed is to make sale and execution proceedings unnecessary and only a contrived reading of the act could make it applicable. *Id.* at 167.

*dated* debt does not constitute an accord and satisfaction because in such a situation the creditor has given no consideration. *Nies v. Metropolitan Casualty Insurance Co. of New York*, 317 Pa. 545, 177 A. 754 (1935). As *Nies* explained:

> "The reason ... is that the debtor gives nothing he was not already bound to give, and the creditor receives nothing he is not already entitled to receive, and there is therefore no consideration." That has been the law in this State from at least as far back as *Lowrie v. Verner*, (1834) 3 Watts, 317, 319 (1834), and so far as we are aware has never been seriously doubted since then.

*Id.*, 317 Pa. at 549, 177 A. at 756 (quoting *Fowler v. Smith*, 153 Pa. 639, 645, 25 A. 744, 746 (1893)). (Material omitted from *Nies* quotation). *See also Corbin on Contracts*, § 1281 (1962).

*King v. Boettcher*, 150 Pa.Cmwlth. 490, 498–99, 616 A.2d 57, 62 (1992). An element essential to the defense of accord and satisfaction is an actual and substantial difference of opinion as to the amount due. *Hayden v. Coddington*, 169 Pa.Super. 174, 177, 82 A.2d 285, 287 (1951).

An accord is contractual in nature and rests upon the elements of a valid contract. *Nowicki Construction Co., Inc. v. Panar Corp., N.V.*, 342 Pa.Super. 8, 492 A.2d 36 (1985). Legal consideration sufficient to support an accord arises when the parties have a legitimately disputed claim, and the creditor accepts less than it claims is due. *Id.* A valuable consideration consists in some right, interest or benefit to one party or some loss, detriment or responsibility resulting to the other party. *Melroy v. Kemmerer*, 218 Pa. 381, 67 A. 699 (1907). "If there is any advantage to the creditor the law will not weigh the adequacy of the consideration." *Id.* at 384, 67 A. at 700 (quoting *Fowler v. Smith*, 153 Pa. 639, 25 A. 744 (1893)).

In the present case, appellant correctly asserts that no dispute existed between the parties as to the amount due on appellee's debt. Moreover, the benefits of the "deed in lieu of

foreclosure" inured to appellee, who avoided the execution costs. Appellant, additionally, received less than its claim and did not proceed to "satisfy" the judgment on record. *See Hazelwood Lumber Co., Inc. v. Smallhoover,* 500 Pa. 180, 455 A.2d 108 (1982) (holding the old common law rule, payment of a sum less than the face value of a liquidated debt lacks consideration sufficient to support a binding accord and satisfaction, does not apply if the creditor marks the judgment "satisfied" on the record). Thus, the "deed in lieu of foreclosure" transaction was not an accord and satisfaction between the parties and cannot serve as a defense against appellant's claim.

■ Finally, appellant submits, the "deed in lieu of foreclosure" transaction did, in fact, operate to discharge the mortgage obligation on the commercial property by merger. Nevertheless, appellant proffers, its deficiency claim against appellee, recorded and reduced to a judicial lien on the residential property, remained intact. Only the mortgage lien on the commercial property was dissolved in the "deed in lieu of foreclosure" transaction. We agree.

> [T]he judgment creditor] must be viewed as having held the land, from the moment he became the owner of it, entirely free from all lien on account of the judgment; because, being the owner (as it most clearly appears from the evidence) of the judgment, when he bought the land from ... the defendant in the judgment, the lien of the judgment thereby became extinct through operation of law; there being no agreement made, or intention manifested at the time, to continue it for any purpose whatever. And, indeed, having become the absolute owner of the land, and being so also of the judgment, at the same time, it is not very easy to conceive why the lien should have continued to exist longer: because it would be idle, if not perfectly absurd and ridiculous for a creditor to wish that his own property should be bound for the payment of a debt owing to himself; it is even difficult, if not impossible, to conceive how this could be. The lien of the judgment, then, having thus become extinct,

it cannot be imagined that the subsequent transfer of either the judgment or the land should revive it again. . . .

*Eshleman v. Woerner,* 17 Pa.D. & C.2d 227, 232 (1958) (quoting *Koons v. Hartman,* 7 Watts 20, 24–25 (1838)). "Discharge of a mortgage obligation by merger of the legal and equitable titles depends upon the intention of the mortgagor and mortgagee at the time of the alleged merger." *Golder v. Bogash (First Trust Co. of Philadelphia),* 325 Pa. 449, 451, 188 A. 837, 838 (1937) (quoting *Fair Oaks Building & Loan Ass'n. of Leet Tp. v. Kahler,* 320 Pa. 245, 181 A. 779 (1935)). A careful conveyancer will avoid uncertainty as to the effect of a deed to the holder of a mortgage by inserting in the deed a statement of declaration of intention that the deed is (or is not) intended to discharge the mortgage *and its accompanying bond.* Ladner, Conveyancing in Pennsylvania § 12:27 (emphasis added).

Here, the deed of November 23, 1987 which appellee tendered in lieu of foreclosure included a statement as follows:

THIS indenture is given by Grantor to Grantee in lieu of the Grantee's foreclosure of its mortgage dated November 8, 1984 from Gaspare Balsamo and Carla S. Balsamo, his wife recorded in the Recorder of Deed Office of Washington County, Pennsylvania on November 8, 1984 in MBV 1340, Page 264. *It is the intention of the Grantee (holder of such mortgage) that this indenture is intended to discharge the mortgage by merger.*

(emphasis added). This statement manifested the intent of the parties that the "deed in lieu of foreclosure" transaction was intended to discharge by merger the mortgage lien on the commercial property. The accompanying bond, however, was not merged. The statement, therefore, effects *nothing more* than what had already occurred by operation of law, In short, title to the commercial property was cleansed of the mortgage lien so that appellant's subsequent transferee took title to the property free of any encumbrance by the mortgage lien. The "deed in lieu of foreclosure" transaction did not relieve appellee of her liability on the note. Appellant's judgment lien was recorded and attached to all real property of appellee in the

county pursuant to 42 Pa.C.S.A. § 4303(a), (b), which included the residential property.

Moreover, appellee listed appellant's judicial lien in her subsequent bankruptcy proceeding, thereby acknowledging the existence of the lien as affecting her residential property. Appellee took no affirmative steps to avoid the lien on her residence during the bankruptcy action. Thus, the intention of the parties was clear that the "deed in lieu of foreclosure" transaction regarding the commercial property was in lieu of foreclosure and not in lieu of the entire debt. It did not affect appellant's judicial lien on the residential property. Unless appellee petitions the bankruptcy court to avoid appellant's lien on the residence, the lien remains. Accordingly, we reverse the trial court's order striking appellant's writ of revival.[10]

Order reversed.

---

**10.** Pursuant to our disposition of appellee's petition to "strike" the writ of revival, under the rubric of subject matter jurisdiction, we decline to discuss further appellant's issue on the timeliness of that petition.