**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF CARNEGIE, Belmont County National Bank, Reliable Savings and Loan Association and Resolution Trust Corporation (Successor to the interest of Liberty Bell Savings Association)**

v.

**Raymond F. KEISLING and Janet L. Keisling, his wife, and John C. Keisling, Sr. and Marian R. Keisling, his wife.**

**Appeal of First Federal Savings & Loan Association of Carnegie.**

Superior Court of Pennsylvania.

Argued Jan. 12, 2000.

Filed Feb. 11, 2000.

Reed J. Davis, Pittsburgh, for appellant.

**1152**

Joseph M. Ludwig, Pittsburgh, for Raymond & Janet Keisling, appellees.

Before KELLY, JOHNSON, and TAMILIA, JJ.

JOHNSON, J.:

¶ 1 First Federal Savings and Loan Association of Carnegie (First Federal) appeals the trial court's order denying its motion to fix fair market value of real property and discharging its deficiency judgment against Raymond L. Keisling and Janet L. Keisling, his wife. The trial court found that First Federal made an indirect purchase of real property formerly owned by the Keislings to satisfy a deficiency judgment. Though the proceeds from the sale did not satisfy the judgment, First Federal failed to petition the court to fix the fair market value of that property. The court concluded, accordingly, that First Federal failed to comply with the Deficiency Judgment Act, 42 Pa.C.S. § 8103. We conclude that the trial court's findings are supported by the record, and we concur in its assessment of applicable law. Consequently, we affirm the court's order.

¶ 2 This case arises out of an action in mortgage foreclosure to satisfy a note secured by real property. In 1991, First Federal obtained judgment on the note for $1,834,199.12, against John C. Keisling, Sr. and Marian R. Keisling, his wife, and Raymond F. Keisling and Janet L. Keisling, his wife. First Federal sold the mortgaged property at execution but realized a recovery substantially less than the amount of the note, leaving a deficiency of $470,568.70, upon which the court entered judgment in 1995. In 1997, First Federal satisfied the judgment against John C. Keisling, Sr. and Marian R. Keisling, his wife, but retained judgment in the amount of $275,284.35 against Raymond F. Keisling and Janet L. Keisling, his wife (the Keislings).

¶ 3 To satisfy the judgment against the Keislings, First Federal executed on their Upper St. Clair Township residence and sold the property at a sheriff's sale in December 1997. The sole bidders and successful purchasers of the property were Reed James Davis, Esquire, and Theresa J. Davis, his wife (the Davises), who purchased the property for $80,000. Reed James Davis (Associate) is an associate of the Pittsburgh law firm of Davis Reilly, P.C., where his father, Reed Jerome Davis (Partner), is a principal. The Davis Reilly firm and Partner, personally, acted as counsel for First Federal throughout the proceedings in this case and continue to represent First Federal before this Court. Though the sale price of the residence did not satisfy the outstanding judgment, First Federal did not file a petition to fix fair market value. Allegedly, the amount of the deficiency remaining after the sale of the Keislings' home was $161,726.57.

¶ 4 Following the sale of the Keislings' residence, on January 6, 1998, First Federal filed a writ of execution against rental property in Washington County in which the Keislings owned an undivided one-half interest. First Federal purchased the property at the subsequent sheriff's sale and then petitioned the Court of Common Pleas of Washington County to fix the fair market value of the Keislings' share of the property and fix the amount of the remaining deficiency at $139,567.80. The Keislings challenged First Federal's petition, arguing that First Federal's failure to file a petition to fix fair market value after the sale of their home precluded further execution proceedings and required the judgment to be marked satisfied. The trial court, the Honorable Thomas D. Gladden, P.J., agreed, finding that First Federal was the indirect purchaser of the Keislings' home within the meaning of the Deficiency Judgment Act. The court reasoned that if the judgment creditor could continue to control disposition of the real property following the execution, the sale must be deemed an indirect sale to the judgment creditor notwithstanding the appearance of a third party as the actual purchas-

er at the sheriff's sale. Memorandum Opinion, 5/11/99, at 5. The court found that because Associate is an employee of the law firm that represented First Federal in the execution, Associate was not an independent third party to the transaction, and could be compelled by First Federal to reconvey the property for the judgment creditor's benefit. *Id.* The court concluded accordingly that First Federal continued to enjoy potential control over the property following the sale and, therefore, was required by the Deficiency Judgment Act (sometimes hereinafter the Act) to file a petition to fix fair market value within six months of the sale. *Id.* at 6–7. Because First Federal failed to file such a petition, the court ordered First Federal's judgment marked "RELEASED, SATISFIED and DISCHARGED" pursuant to subsection (d) of the Act. First Federal filed this appeal.

¶ 5 First Federal raises the following issues for our review:

A. WHETHER IN DISMISSING PLAINTIFF'S PETITION TO FIX FAIR MARKET VALUE AND ESTABLISH A DEFICIENCY AND HOLDING PLAINTIFF'S JUDGMENT AGAINST DEFENDANTS SATISFIED UNDER THE DEFICIENCY JUDGMENT ACT, 42 Pa.C.S.A. § 8103, THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY IMPROPERLY HELD THAT THE PURCHASE AT A PRIOR SHERIFF SALE OF DEFENDANTS' RESIDENCE BY AN ASSOCIATE OF PLAINTIFF'S COUNSEL'S LAW FIRM AND HIS SPOUSE WITH PLAINTIFF'S KNOWLEDGE AND APPROVAL FOR A BID OF $80,000, SUBJECT TO A FIRST MORTGAGE OF MORE THAN $32,000, THE SUM OF WHICH EQUALED THE VALUE THE DEFENDANTS PLACED ON THE PROPERTY IN THEIR BANKRUPTCY SCHEDULES, CONSTITUTED AN INDIRECT SALE TO PLAINTIFF REQUIRING PLAINTIFF TO FIX THE FAIR MARKET VALUE OF DEFENDANTS' RESIDENCE BEFORE FURTHER EXECUTING THE JUDGMENT.

1. WHETHER THE LOWER COURT IMPROPERLY CONCLUDED THAT PLAINTIFF INDIRECTLY PURCHASED THE DEFENDANTS' PROPERTY AT A PRIOR SHERIFF SALE.

Brief for Appellant at 4.

¶ 6 First Federal asserts that the trial court erred in concluding that the sale of the Keislings' home to the Davises constituted an indirect sale to First Federal. In its brief on appeal, First Federal argues that the sale to the Davises was not an indirect sale because the Keislings received credit against the judgment for the full value of their equity, and First Federal did not collect a windfall or make a double recovery on the property. Brief for Appellant at 13. The Keislings assert that whether they actually received adequate value from the sale of their property is immaterial to the issue of whether First Federal was the indirect purchaser. Brief for Appellees at 6. They contend that the intent of the legislature, to protect the judgment debtor from self-dealing by the judgment creditor, requires judicial oversight whenever the creditor maintains control over the property following sale. *Id.* at 6–8. The Keislings argue, accordingly, that we must make our determination of whether the sale at issue was an indirect sale to First Federal on the basis of control. They contend that such control is established here by, *inter alia,* the Associate's status as an employee of the law firm that represents First Federal in these proceedings.

¶ 7 "The scope of [appellate] review in a deficiency judgment proceeding is limited to assessing whether sufficient

evidence exists to sustain the trial court's order, or whether the court committed a reversible error of law." *Citicorp Mortgage, Inc. v. Morrisville Hampton Village Realty Ltd. Partnership*, 456 Pa.Super. 338, 690 A.2d 723, 725 (1997). The judgment creditor must carry the burden to demonstrate its compliance with the Deficiency Judgment Act. *Cf. Beneficial Consumer Discount Co. v. Savoy*, 291 Pa.Super. 649, 436 A.2d 687, 689 (1981) (requiring creditor to carry burden of proof in deficiency judgment proceeding under Pennsylvania Commercial Code, section 9504, following seizure and sale of personalty for default in secured transaction). The Act "is to be liberally interpreted in aid of judgment debtors." *Western Flour Co. v. Alosi*, 216 Pa.Super. 341, 264 A.2d 413, 415 (1970).

¶ 8 The material provisions of the Deficiency Judgment Act provide as follows:

### § 8103. Deficiency judgments

(a) **General rule.**—Whenever any real property is sold, *directly or indirectly,* to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold.

\* \* \* \*

(d) **Action in absence of petition.**—If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt, or any person interested in any real estate which would, except for the provisions of this section, be bound by the judgment, may file a petition, as a supplementary proceeding in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by section 5522 to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 Pa.C.S. § 8103(a), (d) (emphasis added).

¶ 9 Following a careful review of the Act and related appellate decisions, we conclude that neither the legislature nor the courts have defined precisely what constitutes a sale of real property "indirectly" to the judgment creditor. Because this term is a prerequisite to application of the Act, we must discern the legislature's intention in having included it in the statutory language. Where the words used in a statute are not facially clear, the Statutory Construction Act requires that we discern the legislative intent with reference to the following considerations:

### § 1921. Legislative intent controls

\* \* \* \*

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

¶ 10 Upon exploration of these factors, we conclude that the occasion and object of the Act, as well as the circumstances of enactment, establish the need for a liberal interpretation in favor of the judgment debtor. The Deficiency Judgment Act was passed in the 1940s to remedy a practice prevalent among judgment creditors during the Great Depression. *See Fidelity Fed. Sav. and Loan Ass'n v. Capponi*, 453 Pa.Super. 640, 684 A.2d 580, 586 (1996); *Grimes v. Grimes*, 216 Pa.Super. 150, 264 A.2d 410, 412 (1970).

> Prior to the Deficiency Judgment legislation, [a judgment creditor,] purchasing at his [execution] sale, was required to credit on the judgment only the price, however nominal, at which the property was sold to him by the sheriff; he was then permitted to issue additional executions to recover the balance of the judgment. Obvious hardships [occurred] resulting from that rule....

*Union Trust Co. of New Castle v. Tutino*, 353 Pa. 145, 148, 44 A.2d 556, 558 (1945). In view of these circumstances, we have held that the purpose of the Deficiency Judgment Act is to eliminate the potential that a debtor might face execution multiple times on the same judgment when the fair market value of mortgaged assets already sold would have been sufficient to satisfy the underlying debt. *See Reliable Sav. and Loan Ass'n of Bridgeville v. Joyce*, 385 Pa.Super. 536, 561 A.2d 804, 807 (1989). Accordingly, the provisions of the Deficiency Judgment Act operate "to protect judgment debtors whose real estate is sold in execution, by requiring the [judgment creditor] to give credit for the [fair market] value of the property [the judgment creditor] purchased at his execution and not merely to credit the price at which

[the property] was sold." *PNC Bank, Nat'l Ass'n v. Balsamo*, 430 Pa.Super. 360, 634 A.2d 645, 654 (1993) (quoting *Tutino*, 353 Pa. at 148, 44 A.2d at 558).

¶ 11 To effectuate the purpose of the Act, the legislature provided for judicial oversight whenever the judgment creditor purchases the mortgaged property at execution "and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs...." 42 Pa.C.S. § 8103(a). Where a deficiency occurs under these circumstances, the Act requires that the "judgment creditor shall petition the court to fix the fair market value of the real property," regardless of whether the creditor effectuated its purchase directly or indirectly. *Id.*

¶ 12 Our case law has not previously determined whether a purchase of real property at execution by professional associates or employees of the judgment creditor's attorney constitutes an indirect sale to the judgment creditor. However, we have recognized that an indirect sale occurs where the attorney himself conducts the purchase, even if he attempts to circumvent the Act by titling the property to a third party. *See Western Flour Co. v. Alosi*, 216 Pa.Super. 341, 264 A.2d 413, 415 (1970). In *Western Flour*, we concluded that "an attorney for an execution creditor may not purchase property at an execution sale for his own benefit and to the prejudice of his client, for a sum less than the amount of the claim for the satisfaction of which the property is sold." *Id.* at 414. In that case, as here, the judgment creditor sold real property at execution and incurred a deficiency. The creditor's attorney was the sole and successful bidder at the sheriff's sale. *See id.* However, he caused the name of a third party to appear on the sheriff's deed. *See id.* We concluded that the attorney could act only in his client's interest and that as a consequence, the attorney's purchase was indistinguishable from a purchase by the creditor itself. Thus, because the creditor's

attorney made the purchase, the Act required the creditor to file a petition to fix fair market value in the trial court. *See id* at 415. We reasoned that notwithstanding the nomination of a third party as purchaser, the property remained within the judgment creditor's *de facto* control because the third party was subject to control by the creditor's attorney. *See id.* Implicit in our decision is the recognition that, due to the identity of interest of attorney and client and the accountability of the third party nominee to the attorney, the creditor retained the discretion, through its attorney, to dispose of the property. *See id.* ("The fact that the right to receive the deed may have been given to [a third party] by designation, assignment or otherwise for or without consideration would be of no importance since [the judgment creditor], as the [indirect] purchaser, would have had the right to resell the property or give it away.").

¶ 13 Our decision in *Western Flour* was rooted in our continuing concern that the protective purposes of the Deficiency Judgment Act might be readily defeated should the judgment creditor and its counsel be permitted to distinguish their respective roles as purchasers, though their respective interests as attorney and client were co-terminus. *See id.* ("In these circumstances, the practice of the attorney on the writ or his nominee taking title to real property at the sheriff's sale, whether by acquiescence or express design of the judgment creditor, should not be permitted to circumvent the purpose of the Deficiency Judgment Act, which is to be liberally interpreted in aid of judgment debtors."). Accordingly, even when the creditor consents to the attorney's role and, and as a result, recoups nothing on its judgment, the transaction remains an indirect sale to the creditor, subject to judicial scrutiny under the provisions of subsection (d) of the Act. *See id.*

¶ 14 Consequently, a finding that an indirect sale occurred does not hinge, as First Federal suggests, on the extent to which the judgment creditor benefited from the transaction. Brief for Appellant at 13 ("The principal concern of the Act is to prevent the creditor from obtaining a 'double recovery'."). In *Western Flour*, the creditor ostensibly derived no benefit from the execution. 264 A.2d at 415. Nor, as First Federal argues, is the indirect nature of a sale negated merely because the creditor consented to its attorney's role in the sale. Brief for Appellant at 14–15. The cases on which First Federal relies to support this assertion are distinguishable. *See Leisenring v. Black*, 5 Watts 303 (Pa.1836); *Drysdale's Appeal*, 14 Pa. 531 (1850). Both holdings predate the Deficiency Judgment Act and, though decided in the context of executions on real property, address allegations of self-dealing by the judgment creditors' attorneys to the detriment of the judgment creditors themselves. Consequently, in those cases, the courts' concern with the creditors' consent to their attorneys' roles in the respective execution sales was motivated by the courts' determination to secure the rights of aggrieved clients against their own attorneys. Our concern, to interpret and apply the Deficiency Judgment Act, must focus on the protection of the rights of the dispossessed debtor. *See Joyce*, 561 A.2d at 807; *Western Flour*, 264 A.2d at 415. Consequently, *Leisenring* and *Drysdale's Appeal* have no application to our analysis.

¶ 15 Based on the occasion and object of the Act, the circumstances of its enactment, and our decision in *Western Flour*, we conclude that a sale of real property at execution may be deemed an indirect sale to the judgment creditor whenever the purchaser stands in a degree of relation to the creditor's counsel that effectively allows the creditor, acting through counsel, to exercise control over the property. Were we to define indirect sale more narrowly, or on the basis of other factors, judgment creditors could evade judicial scrutiny in deficiency situations by pre-arranging sales at executions to third-party strawmen who would later

re-convey the property to the creditor. Moreover, such a reading would effectively eliminate judicial oversight of indirect purchases by the judgment creditor and reinstate the *status quo* as it existed prior to the legislature's enactment of deficiency judgment legislation. *See Joyce*, 561 A.2d at 807. On a large judgment such as the one at issue here, the resulting chain of executions could be used to provide financial benefits to an unscrupulous creditor far in excess of the amount of the judgment. *See Balsamo*, 634 A.2d at 654 ("[T]he creditor, in effect, could recover both the property and the full amount of the debt....."). We cannot countenance a potential result so completely contrary to the legislative intent and the concepts of fundamental fairness that the Act advances.

¶ 16 In this case, we conclude that the purchase at issue was an indirect purchase by First Federal. The status of Associate as an employee of the Davis Reilly law firm placed him in a degree of relationship with the creditor's counsel such as would allow the creditor, acting through counsel, to exercise control over the property. In so stating, we do not conclude that Associate or Partner acted to defraud the Keislings of the equity in their home. Nor do we conclude that First Federal sanctioned the sale to Associate to defeat application of the Deficiency Judgment Act. We are compelled to acknowledge, however, that because the attorney-client relationship of First Federal and Partner and the employer-employee relationship of Associate and Partner *could* be used to facilitate such objectives, First Federal had effective control over the disposition of the property. Consequently, the need for judicial oversight recognized by the Act remained, and Associate's purchase must be deemed an indirect sale to First Federal. We make no conclusion concerning the extent to which the status of the sale may be affected by the relationship of Partner and Associate as father and son.

¶ 17 When real property is sold indirectly to the judgment creditor for a sum less than the amount of the judgment, interest and costs, the Act requires the creditor to petition the trial court to fix the fair market value of the property within six months of the purchase date. *See Balsamo*, 634 A.2d at 654. "[A] failure of the judgment creditor to proceed under the Deficiency Judgment Act within [this] statutorily mandated time raises as a matter of law the conclusive presumption that the judgment has been satisfied." *Joyce*, 561 A.2d at 808. *See also First Nat'l Consumer Discount Co. v. Fetherman*, 515 Pa. 85, 93, 527 A.2d 100, 103 (1987) ("Failure to present [a petition to fix fair market value] within the time prescribed by statute, creates an irrebuttable presumption that the creditor was paid in full in kind.").

¶ 18 To activate the presumption, the judgment debtor or other party specified by the Act need only file a petition in the trial court "setting forth the fact of the sale, and that no petition has been filed within the time limited by section 5522 [relating to six months limitation] to fix the fair market value of the property." 42 Pa.C.S. § 8103(d). Once notice of the petition is provided to the judgment creditor "as prescribed by general rule," the court may order the judgment satisfied if the judge is convinced of the veracity of the facts alleged. *See id.* ("[T]he court, ... being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged."). The judgment creditor may escape satisfaction of its deficiency judgment only upon showing that it did not purchase the property either directly or indirectly, thereby demonstrating that the transaction was not within the scope of the Act.

¶ 19 In this matter, First Federal failed to establish that it did not conduct an indirect purchase of the property in question. It does not dispute the employer-employee relationship of Associate to Partner and the Davis Reilly law firm.

Moreover, its own relationship with Partner and Davis Reilly is a matter of record. First Federal argues that, notwithstanding its failure to petition the trial court to fix fair market value within the requisite period of time, the purchase price paid by the Davises was equal to the value of the Keislings' equity. Because the Act raises an irrebuttable presumption of satisfaction under such circumstances, the actual value of the Keislings' equity is immaterial and provides no basis upon which to disturb the trial court's order.

¶ 20 Because we conclude that First Federal was the indirect purchaser of the disputed property and failed to petition the trial court to fix fair market value within the requisite period of time following the purchase, we affirm the trial court's order declaring the deficiency judgment "RELEASED, SATISFIED and DISCHARGED."

¶ 21 Order **AFFIRMED.**